IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **A.G. NICHOLS, JR.**, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:06-CV-02366-L** |
| | § | |
| **YJ USA CORP. and YEONG JEOU** | § | |
| **INDUSTRIES (M) SDN BHD**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Yeong Jeou Industries (M) Sdn. Bhd.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, filed December 17, 2007. After careful consideration of the motion, response, reply, briefs, record, and applicable law, the court **denies** Defendant Yeong Jeou Industries (M) Sdn. Bhd.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

### I.   Factual and Procedural Background

On May 31, 2005, Defendant YJ USA ("YJ USA"), an Oregon corporation, purchased assets from a third party (the "Asset Purchase Transaction"). Plaintiff A.G. Nichols ("Nichols") assisted YJ USA in negotiating, funding, and closing the Asset Purchase Transaction. In exchange for Nichols's assistance, YJ USA agreed to pay him a royalty based upon the gross revenues generated by the assets. On September 30, 2006, YJ USA sold some of the assets to Defendant Yeong Jeou Industries (M) SDN BDN ("YJ Industries", together with YJ USA, "Defendants"), a Malaysian corporation. According to Nichols, Defendants have failed to pay royalties as agreed on the assets sold to YJ Industries. On December 22, 2006, Nichols filed an Original Petition alleging a breach

of contract claim against YJ USA. Nichols filed its First Amended Complaint on May 8, 2007, in which he added YJ Industries as a defendant and alleged causes of action for accounting, breach of contract, misappropriation and interference with a contract, and fraudulent transfer, and alter ego and single business enterprise against it. Nichols filed its Second Amended Complaint on February 19, 2008, in which he added allegations that YJ USA was acting as an agent of YJ Industries when the parties entered into the Asset Purchase Transaction and when YJ USA agreed to pay a royalty to Nichols. Nichols also added a request for punitive damages against both Defendants.

## II. Rule 12(b)(2) - Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp.2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a

compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the

forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

## III.   Discussion

YJ Industries contends that the court lacks personal jurisdiction because it does not have the requisite minimum contacts with the state of Texas. Plaintiff disagrees and contends that YJ Industries' contacts give rise to both specific and general jurisdiction.

Plaintiff contends that specific jurisdiction exists because his claims arise, in part, from YJ Industries' tortious interference with YJ USA's contractual obligation to pay him a two-percent

royalty. Plaintiff also contends that considerations of fair play and substantial justice allow the court to exercise jurisdiction over YJ Industries because only in rare cases will these considerations prevent the exercise of personal jurisdiction when minimum contacts have been established and because YJ Industries fails to make a compelling case that the court's exercise of jurisdiction over it would be unreasonable. YJ Industries counters that specific jurisdiction does not exist because none of Plaintiff's claims arises out of or relates to its contacts with Texas. YJ Industries also contends that it neither purposely direct its activities toward Texas nor purposely availed itself of the privileges of conducting activities in Texas. YJ Industries further contends that considerations of fair play and substantial justice prevent the court from exercising jurisdiction over it.

The underlying determination for evaluating jurisdiction is whether the defendant could reasonably expect to be haled into court in the forum state. *Burger King Corp.*, 471 U.S. at 474. If a nonresident defendant's alleged intentional tortious actions are specifically aimed at the forum state, "and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions.*" Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Taking as true the uncontroverted allegations in Plaintiff's Second Amended Original Complaint and resolving all conflicts between the facts contained in the parties' affidavits in favor of Plaintiff, the court determines that there is sufficient evidence that YJ Industries directed its allegedly tortious conduct at Texas. The royalty contract with which YJ Industries is alleged to have interfered was governed by Texas law and was to be performed in Texas. Pl.'s 2nd Am. Compl. Ex. B. ¶ 8. Therefore, the injury that Plaintiff alleges resulted from the interference with the royalty

contract is not based upon the mere fortuity that Nichols resides there because the contract itself is related to Texas. *Contra Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001). In *Brandywine*, the plaintiffs sold electricity to the defendant pursuant to a power purchase agreement ("PPA"). Thereafter, the plaintiffs entered into financing agreements with various financial institutions, which encumbered the plaintiffs' revenues from the PPA. The plaintiffs sued defendant for tortious interference and alleged that the defendant's decision to divest itself of certain power-purchasing contracts caused a potential for the plaintiffs to be in default under the financing agreements. The court agreed with the district court that it lacked specific jurisdiction over the defendant because "the financing agreements [were] not governed by Texas law, [were] not to be performed in Texas, and ha[d] no relation to Texas other than the mere fortuity that [the plaintiffs] reside there." *Id.* at 869-70. Because the circumstances that the court faces here are different than those faced by the court in *Brandywine*, the court reaches a different result.

YJ Industries' argument that its "purchase of assets from YJ USA was a sale between an Oregon corporation and a Malaysian corporation that took place in Oregon and specifically contemplated that Oregon law would apply" does not impact the court's decision because it misunderstands the nature of Plaintiff's argument. Plaintiff contends that the transfer of the assets resulted from YJ Industries' efforts to extinguish YJ USA's obligation to pay Nichols a two-percent royalty on the revenues from the assets and that these efforts tortiously interfered with his royalty contract with YJ USA. Stated differently, YJ Industries' alleged intentional tortious conduct (purchasing the assets from YJ USA) was specifically aimed at Texas because it interfered with a Texas contract (the royalty agreement) and it knew that the brunt of the injury would be felt by Nichols (a Texas resident) in Texas. Therefore, YJ Industries must reasonably anticipate being

haled into court in Texas to answer for its tortious actions. Accordingly, YJ Industries' contacts with Texas arise from, or are directly related to, Plaintiff's cause of action, and YJ Industries has sufficient minimum contacts with Texas.

Because YJ Industries has the requisite minimum contacts with Texas, the court must now determine whether this is one of the rare cases where the exercise of jurisdiction will not comport with fair play and substantial justice. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal*, 480 U.S. at 115. As previously stated, there are five factors the court examines in determining fairness and reasonableness of the exercise of personal jurisdiction. The court addresses each in turn.

With respect to the first factor, the defendant's burden, Plaintiffs argue that although YJ Industries will experience some inconvenience, such inconvenience will be minimal because it has already participated in this litigation since June 2007. That YJ Industries has already borne a significant burden by litigating in a foreign country, standing alone, is an insufficient reason to continue to impose such a burden. YJ Industries contends that it would be a substantial burden to "defend itself in a state thousands of miles away from its Asian home against transactions to which it was not a party" and that all of its employees and records are located in China and Malaysia. Def.'s Mot. 18. This argument lacks merit and is nonsensical. In the asset purchase agreement, YJ Industries agreed to defend itself in Oregon, and Oregon is also *thousands* of miles away from its Asian home. Further, YJ Industries is not defending itself against "transactions to which it was not a party." *Id.* It is defending itself against allegations resulting from its allegedly tortious conduct directed at a Texas citizen. Therefore, the court finds that YJ Industries would not suffer an undue burden by defending itself in Texas. This factor weighs in favor of Plaintiff.

With respect to the second factor, the forum state's interests, Plaintiff contends that Texas has a strong interest in ensuring its citizens have a forum to seek redress for intentional torts directed at them. YJ Industries contends that "its acts were not purposefully aimed at Texas." Def.'s Mot. to Dismiss 19. As discussed previously, however, the court finds that YJ Industries' alleged tortious conduct was directed at this forum. This factor also weighs in favor of Plaintiff.

With respect to the third factor, the plaintiff's interest in convenient and effective relief, Plaintiff argues that he is a resident of Texas who cannot be expected to "chas[e] Orson Lin and his enterprise throughout Malaysia and China, looking for a fair and convenient forum." Pl.'s Resp. 21. YJ Industries contends that Plaintiff seeks relief that could be conveniently and effectively granted in Malaysia or a federal court in Oregon. That there are other forums in which Plaintiff may seek convenient and effective relief, however, does not preclude Plaintiff's right to obtain such relief in Texas. Plaintiff is a citizen of Texas. The royalty contract with which YJ Industries is alleged to have interfered was governed by Texas law and was to be performed in Texas. The court determines that this factor also weighs in favor of Plaintiff.

With respect to the fourth factor, the judicial system's interest in efficient resolution of controversies, neither party briefed the issue. The court determines, however, that piecemeal litigation of this case would not result in its efficient resolution. There are two defendants in this case. Plaintiff's lawsuit arises from the conduct of both Defendants. The claims overlap and would likely require some of the same evidence and testimony. YJ Industries would have Plaintiff try half the case in Texas and the other half in either Malaysia or Oregon. This fragmented litigation would unnecessarily waste Plaintiff's time and money and squander scarce judicial resources. The court determines that this factor also weighs in favor of Plaintiff.

With respect to the fifth factor, the state's shared interest in furthering social policies, *Asahi* guides the court's considerations.

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant . . . , as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

*Asahi*, 480 U.S. at 115. Based on the court's determination of the other four factors, this factor also weighs in favor of Plaintiff. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114. In this case, the interests of Plaintiffs and the state of Texas are great. Although the alleged tortious conduct occurred outside the United States, such conduct was directed at Texas and the effects of the allegedly tortious conduct were felt in Texas. For the reasons stated previously, YJ Industries would not suffer an undue burden by defending against Plaintiff's claims in Texas. Because all five factors weigh in favor of Plaintiff, the exercise of jurisdiction over YJ Industries comports with fair play and substantial justice.

Plaintiff has established that YJ Industries' has sufficient minimum contacts with Texas and that the exercise of jurisdiction over it comports with fair play and substantial justice. Accordingly, Plaintiff has met his burden of establishing a prima facie case for the court's jurisdiction over YJ Industries. Based on the court's ruling, it need not determine whether general personal jurisdiction over YJ Industries exists.

## IV. Conclusion

For the reasons herein stated, YJ Industries has sufficient minimum contacts with Texas, and the exercise of jurisdiction over it by this court comports with fair play and substantial justice. Accordingly, the court **denies** Defendant Yeong Jeou Industries (M) Sdn. Bhd.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

**It is so ordered** this 10th day of September, 2008.

Sam A. Lindsay
United States District Judge