IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| A.G. NICHOLS, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-2366-L** |
| | § | |
| YJ USA CORP. and | § | |
| YEONG JEOU INDUSTRIES (M) | § | |
| SDN BHD, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' First Amended Objections to Magistrate's February 27, 2008 Order, filed March 13, 2008. Plaintiff objects to certain findings and appeals Magistrate Judge Sanderson's order granting Defendant YJ USA Corp.'s Motion to Compel Documents and Testimony Withheld by Plaintiff Under Claim of Privilege.[1]

### I. Factual and Procedural Background

Plaintiff A.G. Nichols ("Nichols") claims privilege with respect to communications exchanged in connection with Defendant YJ USA Corp.'s ("YJ USA") purchase of assets from a third party (the "Asset Purchase Transaction"). On November 1, 2004, Nichols began to act as a consultant for YJ USA on certain matters, and the parties agreed that he would "advise [it] on various issues regarding the trampoline business." YJ USA's Mot. to Compel, Ex. B. The parties also agreed that he "may attend and represent [YJ USA's] best interests at various meetings and

---

[1] Defendant YJ USA Corp. contends that Plaintiff's objection is deficient because it fails to identify the appropriate standards of review and specifically object to the magistrate judge's findings with reference to the applicable standards. After review of Plaintiff's objection, the court determines that it is not deficient. Accordingly, the court herein addresses the merits of Plaintiff's objection.

**Memorandum Opinion and Order – Page 1**

other events, or assist [it] in other ways that [they] both agree to." *Id.* On March 8, 2005, YJ USA notified Nichols of its decision to evaluate the purchase of certain assets (the "Jump King Assets"). YJ USA authorized Nichols to "incur certain expenses" on its behalf while he assisted with the evaluation. *Id.* at Ex. C. This authorization was "independent of [YJ USA's] consulting agreement with [Nichols]." *Id.*

On March 9, 2005, the parties entered into a new agreement regarding Nichols's provision of consulting services to YJ USA. Pursuant to this agreement, Nichols was to provide "verbal or written suggestions, opinions, and assistance as directed by [YJ USA]" and to attend meetings as directed by YJ USA. *Id.* at Ex. D. When YJ USA was absent from such meetings, Nichols agreed to represent its interests. *Id.*

In conjunction with the closing of the Asset Purchase Transaction on May 31, 2005, the parties entered into a third consulting agreement. Pursuant to this agreement, Nichols agreed to advise YJ USA in connection with the structuring and negotiation of YJ USA's purchase of the JumpKing Assets. Nichols was an independent contractor of YJ USA. He had no authority to act as YJ USA's representative or agent.[2] Nichols also loaned money to YJ USA to assist in the purchase of the Jump King Assets.

---

[2]The contract, in relevant part, reads as follows:
> Contractor has no authority to act of behalf of or enter into any contract, incur any liability or make any representation on behalf of the Company. Contractor shall not take any actions or make any representations to any person or entity that would suggest that any relationship exists between the Company and Contractor other than as an independent contractor. Contractor shall have no right or authority to assume or create any obligations on behalf of the Company, express or implied, nor shall Contractor or the Company represent to any person or entity that Contractor has such authority or that he serves the Company in any capacity other than as an outside consultant.

Pl.'s Or. Compl. Ex. B. ¶3.

Prior to the Asset Purchase Transaction, Nichols had been represented by the Winstead law firm ("Winstead") for approximately 30 years, and YJ USA had been represented primarily by Schwabe, Williamson, & Wyatt ("Schwabe"). At some point, Nichols contacted Winstead for assistance with the Asset Purchase Transaction. According to Nichols, he contacted Winstead to represent his personal interests as lender and to provide him with legal advice. Nichols contends that he did not retain Winstead to represent YJ USA or to provide it with any legal advice and that he was not asked to do so. According to YJ USA, it instructed Nichols to retain legal counsel in Texas to represent it in the Asset Purchase Transaction, and Nichols engaged Winstead pursuant to that request.

On December 6, 2007, YJ USA filed Defendant YJ USA Corp.'s Motion to Compel Documents and Testimony Withheld by Plaintiff Under Claim of Privilege. YJ USA sought an order requiring Nichols and attorney Robert Crawford (who worked for the Winstead law firm at the time of the Asset Purchase Transaction) to answer questions about communications between them and to produce written communications between them. Nichols contends that an attorney-client relationship existed between him and Winstead. YJ USA contends that Nichols, as its agent, retained Winstead on its behalf. The court referred the motion to United States Magistrate Judge Wm. F. Sanderson, Jr., and on February 27, 2008, he granted the motion. Nichols objects and contends that this ruling is clearly erroneous and contrary to established law and the evidence in the record.[3]

---

[3]The availability of the attorney-client privilege in a diversity case is determined in accordance with the law of the forum state. *See* Fed. R. Evid. 501. Therefore, Texas law applies to assertions of the attorney-client privilege in this action.

**Memorandum Opinion and Order – Page 3**

## II. Standard of Review

A magistrate judge may rule directly on a nondispositive pretrial motion. 28 U.S.C. § 636(b)(1)(A). A district court may modify or set aside these rulings only if they are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to the magistrate judge's factual determinations. *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994). A magistrate judge's determination is "clearly erroneous" when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 481 (N.D. Tex. 2001) (internal citation omitted). The "contrary to law" standard applies to the magistrate judge's legal conclusions. *Smith*, 154 F.R.D. at 665. The district court reviews a magistrate judge's legal conclusions *de novo*. *Id.*

## III. Discussion

Nichols appeals the magistrate judge's order granting YJ USA Corp.'s motion to compel and ordering him to disclose certain communications between him and Winstead. Nichols contends that an attorney-client relationship existed between him and Winstead and that these communications are priveleged. YJ USA contends that Nichols, as its agent, retained Winstead on its behalf.

### 1. The Attorney-Client Relationship

Nichols contends that the magistrate judge erred when he determined that Nichols was not Winstead's client. Defendants contend that there is sufficient evidence to support the magistrate judge's finding. Whether an attorney-client relationship exists is an issue of fact, and the magistrate judge's resolution of the issue is reviewed for clear error. *See Casielles v. Taylor Rolls Royce, Inc.*, 645 F.2d 498, 205 (5th Cir. 1981) (using standard when determining whether parties had entered into contract).

"To establish an attorney-client relationship, the parties must explicitly or by their conduct manifest an intention to create it." *Arabzadegan v. State*, 240 S.W.3d 44, 49-50 (Tex. App.–Austin 2007, pet. ref'd) (internal citation omitted). The determination of whether an attorney-client relationship existed between Nichols and Winstead is complicated because Nichols played dual roles in the Asset Purchase Transaction. On one hand, Nichols acted as a consultant to YJ USA when he assisted in the evaluation of the assets for the transaction. On the other hand, Nichols served as lender when he loaned YJ USA half of the purchase price for the assets. The evidence, therefore, must be viewed in light of both roles.

Overall, YJ USA relied on Nichols's advice on issues relating to the trampoline business because of his years of experience in that business. YJ USA's Mot. to Compel, Ex. B. As the consultant for YJ USA for the Asset Purchase Transaction, YJ USA used Nichols's expertise primarily to assist it in evaluating the equipment, factory, and inventory. Adams Dep. 61:15-16, Nov. 2, 2007. He agreed, in YJ USA's absence at meetings he attended in his consultant capacity, that he would represent its interests. During the documentation of the Asset Purchase Transaction, however, Nichols's role shifted from consultant to lender. In this capacity, he had no obligation to represent YJ USA's interests. The chronology of events reflects that in this documentation process, the parties reached out to the firms with which they already had a relationship. Nichols contacted Winstead to represent him, and YJ USA contacted Schwabe to represent it.

Although lenders are not usually parties to the transaction documents (including asset purchase agreements), it is common for the lender's counsel to review the transaction documents and to suggest changes thereto that are beneficial to the lender. The record reflects that this is what happened in this case. The record reflects that the sellers likely drafted the asset purchase

**Memorandum Opinion and Order – Page 5**

agreement. Winstead suggested changes to the asset purchase agreement.[4] *See, e.g.*, Kerstiens Dep. 40:1-6, Nov. 30, 2007. Winstead drafted the financing documents – the security agreement and promissory note – pursuant to Nichols's request. App. to Pl.'s Resp. 76. It also drafted the new consulting agreement. *Id.* Winstead's actions reveal that it believed Nichols to be its client because it made suggestions to the transaction documents drafted by seller's counsel, but took responsibility for drafting the financial documents. Schwabe reviewed and suggested changes to these documents on behalf of YJ USA. Kerstiens Dep. 80:18-22. Moreover, in its review of the asset purchase agreement, Schwabe discovered an issue with the transfer of intellectual property ("IP") and drafted documents to ensure that YJ USA's interests would be protected and that the IP would be properly transferred. Hartwell Dep. 28:23-25; 29:1-2, Nov. 30, 2007. These actions reveal that Schwabe believed YJ USA to be its client.

Although there is some evidence to support the magistrate judge's finding that an attorney-client relationship existed between YJ USA and Winstead, the order reflects that he reviewed the evidence solely in light of Nichols's role as a consultant. As previously stated, the evidence in this case must be viewed in light of both of Nichols' roles in the Asset Purchase Transaction. Because this was not done, the court is left with the definite and firm conviction that a mistake has been committed. When the court views the evidence in light of Nichols's role as a lender as well as a

---

[4]YJ USA argues that Nichols waived the argument that Winstead reviewed the Asset Purchase Agreement to protect his interest as a lender because he did not make it before the magistrate judge. This contention lacks merit. It has always been Nichols's position that Winstead represented him as the lender in the Asset Purchase Transaction. *See* Pl.'s Resp. To YJ USA's Mot. to Compel ¶ 5. Therefore, the court may reasonably infer that Winstead reviewed the Asset Purchase Agreement to protect his interest as a lender, and Nichols has not waived this argument. Although the court will consider this argument, it will not consider any evidence in support thereof that was not presented to the magistrate judge.

**Memorandum Opinion and Order – Page 6**

consultant, it concludes that the magistrate judge's determination that no attorney-client relationship existed between Nichols and Winstead is clearly erroneous.

That Nichols sought reimbursement from YJ USA of the legal expenses he incurred for the Asset Purchase Transaction does not alter this finding. These type of fees are commonly reimbursed by borrowers,[5] and Nichols's entitlement to such reimbursement is not before the court. Similarly, the language "Thank you for the opportunity to represent you in this matter" in the letter from Winstead to YJ that accompanied the closing documents does not alter the court's conclusion. Winstead explained that this sentence was originally included in the letter that it sent to Nichols with his copy of the closing documents. Crawford Dep. 11:4-22, Dec. 4, 2007. When Winstead duplicated the letter to send to YJ USA with its copy of the closing documents, the language was inadvertently left in. *Id.* Because these types of duplicating mistakes are not infrequent in the business world, Winstead's explanation is reasonable. Moreover, no *evidence* in the record refutes his explanation. The magistrate judge found the statement to be "inconsistent with any claim that the Winstead firm was *not* representing YJ USA." Mag. Judge's Order 5. This underscores the court's determination that his ruling failed to consider the evidence in light of both of Nichols's roles in the Asset Purchase Transaction. When the evidence and Winstead's explanation are viewed in light of Nichols's role as lender, the statement is not "inconsistent."

### 2. Attorney-Client Privilege

Once an attorney-client relationship is established, not all communications with the attorney are privileged. "The attorney-client privilege protects from disclosure confidential communications between a client and his or her attorney made for the purpose of facilitating the rendition of

---

[5] *See* Pl.'s 1st Am. Obj. 17 n.44.

**Memorandum Opinion and Order – Page 7**

professional legal services to the client . . . ." *International Ins. Co. v. RSR Corp.*, 426 F.3d 291, 299 (5th Cir.2005) (internal quotation marks and citation omitted), *reh'g denied*. "A communication is only 'confidential' for the purposes of the attorney-client privilege if it is not intended to be disclosed to a third party." *Id.* at 299 n.27 (internal citation omitted). The attorney-client privilege "exists to protect [both] the giving of professional advice . . . [and] the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The party asserting a privilege has the burden to demonstrate that the privilege exists under the circumstances presented. *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002).

Nichols contends that the communications at issue were made while Winstead "advised and assisted him" as the lender in the Asset Purchase Transaction and that these communications were not intended to be disclosed to a third party. Pl.'s Resp. to Mot. to Compel ¶¶ 21-22. The court agrees. In light of the court's ruling that Nichols engaged Winstead in his capacity as lender rather than as a consultant for YJ USA, any confidential communications made for the purpose of facilitating the rendition of professional legal services to him is protected by the attorney-client privilege. Nichols cannot be compelled to disclose these communications.

For the reasons stated herein, the court finds that an attorney-client relationship existed between Nichols and Winstead and that their communications were privileged. Accordingly, Plaintiffs' First Amended Objections to Magistrate's February 27, 2008 Order are **sustained;** the magistrate judge's February 27, 2008 order is hereby **vacated**; and Nichols is **not required** to produce correspondence or communications between him and Winstead from March 9, 2005,

through May 31, 2005, or answer deposition questions regarding such correspondence or communications.

**It is so ordered** this 12th day of November, 2008.

_/s/ Sam A. Lindsay_
Sam A. Lindsay
United States District Judge