IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **A.G. NICHOLS, JR.**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:06-CV-02366-L** |
| | § | |
| **YJ USA CORP. and YEONG JEOU** | § | |
| **INDUSTRIAL (M) SDN BHD**,[1] | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant YJ USA Corp.'s Renewed Motion for Summary Judgment

or in the Alternative, Partial Summary Judgment, filed July 7, 2008; Defendant YJ USA Corp.'s

Supplemental Motion for Summary Judgment, filed July 7, 2008; Defendant Yeong Jeou Industrial

(M) Sdn. Bhd.'s Renewed Motion for Summary Judgment and Supplemental Motion for Summary

Judgment, filed July 7, 2008; Plaintiff's First Amended Renewed Motion for Partial Summary

Judgment as to Certain Affirmative Defenses of Defendant Yeong Jeou Industrial (M) Sdn. Bhd.,

filed July 7, 2008; Plaintiff's First Amended Renewed Motion for Partial Summary Judgment as to

Certain Affirmative Defenses and Claims of Defendant YJ USA Corp., filed July 7, 2008; and

Plaintiff's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed July 7, 2008.[2]

---

[1]Plaintiff sued Yeong Jeou Industries (M) Sdn. Bhd; however, the defendant's correct name is **Yeong Jeou Industrial (M) Sdn. Bhd**. The clerk of the court is directed to correct the docket sheet to reflect the correct name of this defendant.

[2] Since the motions for summary judgment were filed, YJ USA filed a motion for certification for interlocutory appeal, a motion for reconsideration of the court's November 12, 2008 order, and a motion for judicial determination of discovery issues arising from the November 12, 2008 order. The court has reviewed these motions and determined that they do not affect the pending motions for summary judgment. Therefore, the court proceeds to rule on the pending summary judgment motions.

After careful consideration of the motions, responses, replies, briefs, record, and applicable law, the court **grants in part and denies in part** Defendant YJ USA Corp.'s Renewed Motion for Summary Judgment or in the Alternative, Partial Summary Judgment; **grants in part and denies in part** Defendant YJ USA Corp.'s Supplemental Motion for Summary Judgment, filed July 7, 2008; **grants in part and denies in part** Defendant Yeong Jeou Industrial (M) Sdn. Bhd.'s Renewed Motion for Summary Judgment and Supplemental Motion for Summary Judgment; **grants in part and denies in part** Plaintiff's First Amended Renewed Motion for Partial Summary Judgment as to Certain Affirmative Defenses of Defendant Yeong Jeou Industrial (M) Sdn. Bhd.; **grants in part and denies in part** Plaintiff's First Amended Renewed Motion for Partial Summary Judgment as to Certain Affirmative Defenses and Claims of Defendant YJ USA Corp; and **denies** Plaintiff's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

## I.      Factual and Procedural Background

This case arises from a dispute regarding payments that Plaintiff A.G. Nichols ("Nichols") alleges he is owed in connection with Defendant YJ USA Corp.'s ("YJ USA") purchase of assets from a third party (the "Asset Purchase Transaction").  Nichols has worked in the trampoline industry for many years.  On November 1, 2004, he began to consult YJ USA regarding its entry into the trampoline business, and the parties agreed that Nichols would "advise [it] on various issues regarding the trampoline business."  YJ USA's Resp. to Pl.'s Mot. Summ. J. ("YJ USA's Resp."), App. 1.  The parties also agreed that Nichols "may attend and represent [YJ USA's] best interests at various meetings and other events, or assist [it] in other ways that [they] both agree to."  *Id.*  On March 8, 2005, YJ USA notified Nichols of its decision to evaluate the purchase of certain assets (the "JumpKing Assets").  On March 9, 2005, the parties entered into a new agreement regarding

the consulting services that Nichols would provide to YJ USA. Pursuant to this agreement, Nichols was to provide "verbal or written suggestions, opinions, and assistance as directed by [YJ USA]" and to attend meetings as directed by YJ USA. *Id.* at 3. When YJ USA was absent from such meetings, Nichols agreed to represent its interests. *Id.* According to YJ USA, Nichols structured and negotiated the Asset Purchase Transaction pursuant to this contract.

Prior to closing the Asset Purchase Transaction, Nichols and Craig Adams (YJ USA's president) discussed executing a third consulting agreement. According to YJ USA, the new agreement would pay Nichols two percent of the revenues that were attributable to the sale of JumpKing products via the call center in exchange for his ongoing service. Adams Dep. 175:12-16, Nov. 2, 2007, *Id.* at 92.

In conjunction with the closing of the Asset Purchase Transaction on May 31, 2005, YJ USA executed an asset purchase agreement with JumpKing, Inc. ("JumpKing") and ICON IP, Inc. ("ICON") (the "Asset Purchase Agreement"), but Nichols was not a party to this agreement. He executed various loan documents and a third consulting agreement (the "May Consulting Agreement") with YJ USA. According to Nichols, pursuant to this agreement, he agreed to consult YJ USA in connection with the structuring and negotiation of YJ USA's purchase of the JumpKing Assets. In exchange for Nichols's assistance, YJ USA agreed to pay him $30,000 and "two percent (2%) of the gross revenues generated by the Assets during the five (5) year period ending May 31, 2010, including, without limitation, revenues attributable to the sale, lease, license or other disposition of the Assets of any rights therein." (the "two percent provision"). *Id.* at 106. YJ USA paid the $30,000 at the time of the execution. *See* Adams Dep. 87:3-7, Pl.'s Resp. to YJ USA's Mot. Summ. J. ("Pl.'s Resp to YJ USA"), App. 50. On September 30, 2006, YJ USA entered into an asset

purchase agreement ("Second Asset Purchase Agreement") with Defendant Yeong Jeou Industrial (M) SDN BDN ("YJ Industrial", together with YJ USA, "Defendants") to sell some of the assets. According to Nichols, Defendants have failed to pay royalties as agreed on the assets sold to YJ Industrial.

On December 22, 2006, Nichols filed an Original Petition alleging a breach of contract claim against YJ USA. Nichols filed its First Amended Complaint on May 8, 2007, in which he added YJ Industrial as a defendant and alleged causes of action for accounting, breach of contract, misappropriation and interference with a contract, fraudulent transfer, and alter ego and single business enterprise against it. Nichols filed its Second Amended Complaint on February 19, 2008, in which he added allegations that YJ USA was acting as an agent of YJ Industrial when the parties entered into the Asset Purchase Transaction and when YJ USA agreed to pay a royalty to Nichols. Nichols also added a request for punitive damages against both Defendants.

On July 7, 2008, Defendants each filed renewed motions for summary judgment. YJ USA also filed a supplemental motion for summary judgment on Plaintiff's claim for punitive damages. On July 7, 2008, Plaintiff filed a First Amended Renewed Motion for: [] Partial Summary Judgment as to Certain Affirmative Defenses of Defendant [YJ Industrial] and [] Partial Summary Judgment as to Certain Affirmative Defenses of Defendant [YJ USA]. The same day, he also filed a First Amended Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909,

915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.     Discussion

### A.     YJ USA's Renewed and Supplemental Motions for Summary Judgment

YJ USA moves for summary judgment on several grounds. The court considers each argument in turn.

#### 1.     Nichols Not a Party to the Asset Purchase Agreement

YJ USA contends that it is entitled to judgment as a matter of law on Nichols's breach of contract claim to the extent that it is based on the Asset Purchase Agreement because Nichols is not a party to such agreement. Nichols concedes that he was not a party to the Asset Purchase Agreement and contends that his claim is based on the May Consulting Agreement rather than the Asset Purchase Agreement. Because Nichols's breach of contract claim is not based on the Asset Purchase Agreement, YJ USA's argument is moot, and the court does not address it further.

#### 2.     May Consulting Agreement Not Supported By Consideration

YJ USA contends that Nichols's breach of contract claim fails because the May Consulting Agreement, upon which it is based, was not supported by consideration. Nichols counters that the agreement was payment for the services he rendered and that his services *were* the consideration.

Nichols also contends that YJ USA waived its failure-of-consideration argument by paying the $30,000 fee as required by the agreement, paying a portion of the royalties due as required by the agreement, and failing to tell Nichols that he was not entitled to royalties under the agreement. The court first considers Nichols's waiver argument.

Under Texas case law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (citation omitted). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* (citation omitted). "The key element to waiver is intent." *ASI Technologies, Inc. v. Johnson Equipment Co*, 75 S.W.3d 545 (Tex. App.–San Antonio 2002, pet. denied). "In order to establish waiver, the act must be clear and decisive." *Id.* "Where the facts are clearly established and undisputed . . . waiver becomes a question of law." *Id.* at 195.

The first element of waiver is satisfied because YJ USA had a right to avoid the May Consulting Agreement if it was not supported by consideration. *Robinson v. National Autotech, Inc.*, 117 S.W.3d 37, 41 (Tex. App.–Dallas 2003, pet. denied) ("A contract that lacks consideration lacks mutuality of obligation and is unenforceable."); *see also Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997), *superseded by statute on other grounds as recognized in General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 593 (Tex. 2001). Nichols fails to present evidence that YJ USA had actual knowledge of the existence of its right to avoid the contract because of lack of consideration. Therefore, he has not established the second element of waiver. With respect to the third element, Nichols contends that YJ USA waived its right by paying the

$30,000 fee and a portion of the royalties and by failing to tell him that he was not entitled to royalties under the agreement. Such conduct is inconsistent with YJ USA's right to avoid the contract, however, only if YJ USA had actual knowledge of the right. As previously stated, Nichols fails to establish that YJ USA had such knowledge. Therefore, he also fails to show that YJ USA's conduct was inconsistent with its right to avoid the contract and has not established the third element of waiver. Because Nichols fails to establish all of the elements of waiver, YJ USA has not waived its lack-of-consideration argument, and the court addresses it.[3]

Texas law provides that "[c]onsideration may consist of either benefits or detriments to the contracting parties - it may consist of some right, interest, profit, or benefit that accrues to one party, or alternatively, of some forbearance, loss, or responsibility that is undertaken or incurred by the other party." *City of The Colony v. North Tex. Mun. Water Dist.*, -- S.W.3d --, No. 02-07-00123-CV, 2008 WL 5056886 at *14 (Tex. App. Fort Worth 2008, no pet. h.) (citation omitted). The existence of a written contract *presumes* consideration for its execution. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex. App.– San Antonio 2005, no pet.). If a party alleges lack of consideration, it has the burden to rebut this presumption. *See* Tex. R. Civ. P. 94; *Doncaster*, 161 S.W.3d at 603.

The May Consulting Agreement was reduced to writing. It reflects that YJ USA promises to pay Nichols certain sums in exchange for Nichols's promise to structure and negotiate the Asset

---

[3]YJ USA argues that Nichols may not argue waiver in opposition to its motion for summary judgment because he failed to plead this defense. YJ USA misconstrues Rule 8 of the Federal Rules of Civil Procedure. According to Rule 8, a party need only state its affirmative defenses "[i]n responding to a pleading." YJ USA raised failure of consideration in its answer. Because the court did not order Nichols to reply to YJ USA's answer, no responsive pleading to its answer was required. *See* Fed. R. Civ. P. 7(a). Therefore, Nichols was not required to plead waiver prior to arguing that theory in response to YJ USA's motion for summary judgment.

Purchase Transaction. YJ USA's Mot. Summ. J., App. 30. Therefore, the court presumes that there was consideration for the execution of the May Consulting Agreement.

To rebut this presumption, YJ USA presents Nichols's testimony that he had structured and negotiated the Asset Purchase Transaction prior to the execution of the May Consulting Agreement. *See* Nichols's Dep. 184:2-12,22-24, YJ USA's Mot. Summ. J., App. 116. Although consideration that does not impose a legal obligation at the time it is furnished does not generally support a subsequent promise to confer a benefit, "[a]n act done at the request of another, performed under such circumstances that the law will imply a promise to pay for it, signifies sufficient consideration for a subsequent express promise to pay for the act performed." *Shindler v. Marr & Assoc.*, 695 S.W.2d 699, 705 (Tex. App.– Houston [1st Dist.] 1985, writ ref'd n.r.e.) (citation omitted). Because of Nichols's expertise in the trampoline business and prior relationship with JumpKing, YJ USA requested that he structure and negotiate the Asset Purchase Transaction. Just as one expects to pay financial planners and tax lawyers for the services rendered in their fields, one would also expect to pay for the professional services Nichols rendered in structuring and negotiating the Asset Purchase Transaction. Therefore, the law implies a promise to pay for Nichols's services, and his services constitute sufficient consideration for YJ USA's subsequent express promise in the May Consulting Agreement to pay for them.

YJ USA also seeks to rebut the presumption that there was consideration for the execution of the May Consulting Agreement by contending that Nichols had a preexisting duty to perform the services. YJ USA argues that Nichols structured and negotiated the Asset Purchase Transaction pursuant to the March 2005 consulting agreement. As YJ USA concedes, however, the May Consulting Agreement "contains an integration clause stating that there were no prior agreements

between the parties." YJ USA's Mot. Summ. J. 14. Therefore, the only agreement under which Nichols rendered services was the May Consulting Agreement. Because the May Consulting Agreement is supported by consideration and Nichols did not have a pre-existing duty to structure and negotiate the Asset Purchase Transaction, genuine issues of material fact exist regarding the enforceability of the May Consulting Agreement. Accordingly, YJ USA is not entitled to judgment as a matter of law on Nichols's breach of contract claim, which is based upon the May Consulting Agreement.

### 3. Nichols's Declaratory Judgment Claim

YJ USA contends that Nichols's declaratory judgment claim fails because the relief sought by the claim is covered by his breach of contract claim, because the May Consulting Agreement is not enforceable, and because the interpretation that Nichols seeks is contrary to the plain language of the May Consulting Agreement. Nichols argues that declaratory judgment to construe the May Consulting Agreement is appropriate even if it is accompanied by a breach of contract claim. He also argues that his interpretation of the May Consulting Agreement is in accordance with its plain language.

The court follows a three-step analysis to determine whether to allow or dismiss a declaratory judgment action. "A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003).

The court must first decide whether Nichols's claim is justiciable. This is a question of whether an "actual controversy" exists between the parties to the action. *Orix Credit Alliance v.*

*Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). In this context, the "actual controversy" requirement is "coterminous with Article III's 'case or controversy' requirement." *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) (citation omitted). To meet the "case or controversy requirement" of Article III, "a plaintiff must show: (1) [he] has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 617 (5th Cir. 2007). Nichols alleges that YJ USA has not paid him in accordance with the terms of the May Consulting Agreement, seeks a declaratory judgment as to what the contract means, and seeks damages for the breach. The court finds that an actual controversy exists between the parties as to the interpretation of the two percent provision and YJ USA's obligations under it. Therefore, Nichols's claim presents a justiciable issue.

Second, the court must determine whether it has authority to hear this declaratory judgment claim. Because the record establishes that complete diversity exists between the parties and the amount in controversy exceeds $75,000, the court has authority to decide Nichols's declaratory claim. 28 U.S.C. § 1332(a)(1) (2006). Moreover, 28 U.S.C. § 2283 (2006) (the "Anti-Injunction Act") does not apply. With respect to the application of the Anti-Injunction Act, the United States Court of Appeals for the Fifth Circuit states the following:

> [A] district court does not have authority to consider the merits of a declaratory judgment action when (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. § 2283].

*Sherwin-Williams Co.*, 343 F.3d at 388, n.1 (citation omitted). None of these factors applies in this case. According to the record, the only state court action filed by a declaratory defendant is *YJ USA*

*Corp. v. Winstead, P.C., and Robert Crawford, Individually*, Cause No. 07-12835, 160th Judicial District, Dallas, County, Texas. YJ USA seeks damages for legal malpractice and breach of fiduciary duty against Winstead, P.C. and Robert Crawford in connection with their alleged representation of it during the Asset Purchase Transaction. Although the state case and the case before this court both flow from the Asset Purchase Transaction, the two cases do not involve the same issues. Nichols seeks damages for alleged royalty payments owed as a result of the transaction, but YJ USA seeks damages for alleged malpractice that occurred during the transaction. Therefore, no declaratory defendant has filed a cause of action in state court that involves the same issues as those in this court. Because complete diversity between the parties exists, the amount in controversy exceeds $75,000, and the Anti-Injunction Act does not apply, the court has authority to determine Nichols's declaratory judgment claim.

Third, the court must consider whether to exercise its discretionary power to hear the declaratory judgment claim. The court has broad discretion to decide when such relief should be granted. *Orix Credit Alliance*, 212 F.3d at 895.

> A district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the relief sought: (1) will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.

*Williams v. Ballard*, No. 3:02-CV-0270-M, 2004 WL 1499457, at *10 (N.D. Tex. June 18, 2004) (citation omitted)*; see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."). In this case, if the court entered a declaratory

judgment to construe the May Consulting Agreement, the fact finder would still be required to determine whether, given this interpretation, YJ USA breached the agreement. The fact finder would also be required to determine liability on the remaining causes of action. Therefore, the requested declaratory judgment would serve no useful purpose because it neither clarifies and settles the legal relations at issue in this case nor terminates any uncertainty, insecurity, or controversy giving rise to this proceeding. Accordingly, no genuine issue of material fact exists regarding Nichols's declaratory judgment claim, and YJ USA is entitled to judgment as a matter of law on this claim.

### 4.        Nichols Claim for Accounting

YJ USA contends that Nichols's claim for accounting fails because he has not demonstrated that the accounts at issue in this case are so complex as to warrant an equitable accounting. YJ USA also contends that "Nichols has offered no explanation why standard discovery procedures were inadequate for discovering the financial information sought." YJ USA's Mot. Summ. J. 25. Nichols's offers no argument in response to YJ USA's contentions.

An action for accounting is generally founded in equity. *Michael v. Dyke*, 41 S.W.3d 746, 755 (Tex. App.–Corpus Christi 2001, no pet.). "An equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law." *Id.* (citing *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 762 (Tex. App.–El Paso 1993, writ denied). "When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.–Houston [14th Dist.] 2002, pet. denied). Because Nichols failed to respond to this

argument, the record is devoid of any competent summary judgment evidence to establish that he cannot obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories. Moreover, because he failed to respond, Nichols has abandoned the claim and waived his right to pursue it at trial. *DeBardeleben v. Cummings*, 453 F.2d 320, 324-25 (5th Cir. 1972) (holding grant of summary judgment proper when existence of factual issue not presented to trial court). Accordingly, there is no genuine issue of material fact as to Nichols's claim for accounting, and YJ USA is entitled to judgment as a matter of law on this claim.

5. **Texas Supreme Court Does Not Recognize Nichols's Single Business Enterprise Claim**

YJ USA contends that it is entitled to summary judgment on Nichols's single business enterprise claim because Texas law does not recognize such claim as a cause of action. Nichols contends that "[t]he 'single business enterprise doctrine' is an equitable doctrine used to disregard separate corporate identities when multiple corporations do not operate separately, but instead integrate their resources to achieve a common business purpose." Pl.'s Resp. to YJ USA 40. He cites various decisions by the Texas appellate court, federal district court, and United States Court of Appeals for the Fifth Circuit to support his contention that this claim is viable. The Texas Supreme Court recently resolved this dispute when it held that "the single business enterprise liability theory set out in *Paramount Petroleum* will not support the imposition of one corporation's obligations on another." *SSP Partners v. Gladstrong Inv. (USA) Corp*, -- S.W.3d --, 52 Tex. Sup. Ct. J. 65, No. 05-0721, 2008 WL 4891733, at *9 (Tex. Nov. 14, 2008). Therefore, Nichols's single business enterprise claim is not recognized by Texas law, and YJ USA is entitled to judgment as a matter of law on this claim.

### 6.        Nichols's Claim for Punitive Damages

YJ USA contends that Nichols is not entitled to recover punitive damages because the allegations in his complaint are legally insufficient to support such an award and because the Texas Uniform Fraudulent Transfers Act ("TUFTA"), Tex. Bus. & Comm. Code § 24.005 (Vernon 2005), does not provide for recovery of punitive damages. Nichols contends that punitive damages are recoverable under TUFTA and his pleadings establish his entitlement to such an award.

As the parties concede, neither the United States Court of Appeals for the Fifth Circuit nor the Texas Supreme Court has decided whether punitive damages are recoverable under TUFTA. Moreover, there is a split among jurisdictions on this issue. *See DFS Secured Healthcare v. Caregivers Great Lakes*, 384 F.3d 338, 354-55 (7th Cir. 2004) (certifying to Indiana Supreme Court question of whether the Uniform Fraudulent Transfer Act allows punitive damages and describing split among jurisdictions on the issue). The only Texas case on point, *Chu v. Hong*, 185 S.W.3d 507 (Tex. App.–Ft.Worth, 2006, *rev'd on other grounds*, 249 S.W.3d 441 (Tex. 2008), does little to resolve the confusion. In *Chu*, a woman sued her former husband who sold the family business, wired the proceeds to his parents in Korea, and then filed for divorce. She also sued the buyers and their attorney. The jury found in favor of the former wife, and the trial court entered judgment in her favor, which included punitive damages. The buyers filed for bankruptcy, and the attorney appealed. On appeal, although the attorney asked whether TUFTA authorized an award for punitive damages, the court did not answer the question. The court, however, sustained the trial court's award of punitive damages under TUFTA. *Id.* The Texas Supreme Court reversed the court of appeal's judgment, in relevant part, because it found that, pursuant to *Schlueter v. Schlueter*,[4] she

---

[4]975 S.W.2d 584 (Tex. 1998).

had no claim against her former husband for fraudulent transfer and that she therefore had no claim against the attorney for conspiring to fraudulently transfer the business. *Chu*, 249 S.W.3d at 447. Because the Texas Supreme Court found no liability on the underlying claims, it did not reach the issue of whether TUFTA authorized an award for punitive damages.

Before *Chu* was reversed, another judge of this court relied on it to make an "*Erie* guess" and concluded that punitive damages were allowable for TUFTA violations "under the catch-all language of section 24.008(a)(3)(c))[,] which provides for 'any other relief the circumstances may require.'" *Mullins v. Testamerica, Inc.*, No. 3:02-CV-0106-K, 2006 WL 6167401, at *10 (N.D. Tex. Aug. 2, 2006) (Kinkeade, J.). The court agrees with this interpretation of the plain language of the statute. That the Texas Supreme Court reversed *Chu* on other grounds does not alter the court's determination. Contrary to YJ USA's assertion, the court did not "note that the Act provides *only* for 'equitable remedies to rescind the fraudulent transfer, or a damages assessment limited to the amount of the property transfer.'" YJ USA's Supp. Mot. Summ. J. 4. In dealing with the argument that *Schlueter* must yield to the provisions of TUFTA, the Texas Supreme Court merely illustrated that the case was consistent with TUFTA's provisions because it "provides for equitable remedies to rescind the fraudulent transfer, or a damage assessment limited to the amount of the property transferred; [and] *Schlueter* allows precisely the same remedies against a former spouse." *Chu*, 249 S.W.3d at 446. Moreover, *Mack v. Newton*, does not alter the court's determination because it was decided before either *Chu* decision was rendered, and the court's expression of "considerable doubt that exemplary damages are any more recoverable under [TUFTA] than under the Bankruptcy Act" was dicta and is not binding authority. 737 F.2d 1343, 1363 (5th Cir. 1984).

YJ USA also contends that the allegations in Nichols complaint are legally insufficient to support an award of punitive damages. In Count 6 of his Second Amended Complaint, Nichols alleges that "YJ USA's transfer of part of the Assets to YJ China, an affiliate, was a transfer made with intent to hinder, delay or defraud Nichols, as prohibited under Chapter 24, Texas Business & Commerce Code." This language tracks the language of TUFTA. Nichols then includes a request for punitive damages in his prayer for relief. The allegations in Nichols's pleadings were therefore sufficient to place YJ USA on notice that he sought punitive damages against it. That YJ USA filed a supplemental motion for summary judgment in response to Nichols's amended complaint and raises this issue as its sole contention supports the court's conclusion. Because Nichols's pleadings were sufficient to place YJ USA on notice that he sought punitive damages and TUFTA authorizes an award for punitive damages, YJ USA is not entitled to judgment as a matter of law on Nichols's request for punitive damages.

### 7. YJ USA's Objections to Nichols's Summary Judgment Evidence

YJ USA advances a number of objections to Nichols's summary judgment evidence. Specifically, YJ USA objects to the deposition testimony of Craig McGee and John Jenkins. Because the court did not consider this testimony, YJ USA's objections to Nichols's summary judgment evidence are **overruled as moot**.

### B. YJ Industrial's Renewed and Supplemental Motions for Summary Judgment

YJ Industrial moves for summary judgment on several grounds. The court considers each argument in turn.

### 1.     Nichols's Single Business Enterprise/Alter Ego Claim

YJ Industrial contends that it is entitled to summary judgment on Nichols's single business enterprise claim because Texas law does not recognize such claim as a cause of action. Previously herein, the court concluded that Nichols's single business enterprise claim is not recognized by Texas law. Accordingly, YJ Industrial is entitled to judgment as a matter of law on this claim.

YJ Industrial also contends that it is entitled to summary judgment on Nichols's alter ego claim. According to YJ Industrial, Nichols's alter ego claim fails because it is not the alter ego of YJ USA. YJ Industrial argues that its relationship with YJ USA is best characterized as that of vendor-vendee. Nichols, however, argues that genuine issues of material fact exist with respect to his alter ego claim. For the reasons set forth below, the court agrees.

Use of the corporate entity generally protects shareholders and others from liability for corporate obligations. "[W]hen the corporate form has been used as part of a basically unfair device to achieve an inequitable result," however, the courts disregard the corporate fiction. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986), *superseded on other grounds*, Tex. Bus. Corp. Act Ann. art. 2.21 A (West Supp. 1993) (citation omitted). Texas law provides several bases for disregarding the corporate fiction. *See id.* at 272 n.1. One of these bases, alter ego, is when "a corporation is organized and operated as a mere tool or business conduit of another corporation." *Id.* at 272. It applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* When evaluating an alter ego claim, a court must look to the total dealings of the corporations, which include the degree to which "corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the

corporation, and whether the corporation has been used for personal purposes."[5] *Id.* "Because disregarding the corporate fiction is an equitable doctrine, Texas courts take a flexible fact-specific approach focusing on equity." *Id.* at 273.

YJ Industrial presented evidence that its operations were separate from YJ USA's. *See* Affidavit of Orson Lin ¶¶ 2-3, 9-11, YJ Industrial's Mot. Summ J. ("YJI's MSJ"), App. 203-204, 206-07. Nichols, on the other hand, presented evidence that YJ USA is a business conduit of YJ Industrial. *See* Pl.'s Resp. App. 282, 286-87, 320, 435-36, 534. Therefore, a genuine issue of material fact exists as to whether YJ USA is the alter ego of YJ Industrial, and YJ Industrial is not entitled to judgment as a matter of law on this claim.

## 2. Nichols Performed Services Without a Contract

YJ Industrial contends that each of Nichols's causes of action fails because the services for which he seeks compensation were not performed pursuant to the May Consulting Agreement or any other contract. Nichols argues that YJ Industrial conceded that it is a party to the contract by attacking it. He also argues that Craig Adams, YJ USA's president, admitted that there was a verbal agreement prior to the execution of the May Consulting Agreement to pay him royalties. Nichols further argues that the contract itself was payment for services rendered and that YJ Industrial is estopped by its conduct from denying the validity of the May Consulting Agreement.

Nichols contends that YJ Industrial's challenge to the validity of the May Consulting Agreement is inconsistent with a position previously taken because YJ USA benefited from his consulting services and paid him $30,000 and at least a portion of the royalties due the contract. If the trier of fact determines that YJ USA is the alter ego of YJ Industrial, the corporate fiction would

---

[5]Failure to observe corporate formalities is no longer a factor in proving the alter ego theory. *See* Tex. Bus. Corp. Act Ann. art. 2.21 A.

be disregarded and YJ USA's conduct is attributable to YJ Industrial in determining whether it is estopped from challenging the validity of the May Consulting Agreement. If, however, the trier of fact determines that YJ USA and YJ Industrial are two legally separate entities, Nichols could look only to YJ Industrial's conduct as a basis for his estoppel argument. Because genuine issues of material fact exist regarding Nichols's alter ego claim, genuine issues of material fact also exist regarding whether YJ Industrial is estopped from challenging the validity of the May Consulting Agreement. Accordingly, YJ Industrial is not entitled to judgment as a matter of law on any of Nichols's causes of action based on its challenge to the validity of the May Consulting Agreement.

### 3. Royalty Payment Terminated Upon Sale of Assets

YJ Industrial contends that all of Nichols's claims fail because any royalty payment to which he was entitled terminated upon the sale of the assets. It argues that Nichols is not entitled to a percentage of the revenues generated from trade names and other intellectual property assets; that the May Consulting agreement contemplates selling the assets; and that because Nichols is not a party to the asset purchase agreement between it and YJ USA, he has no claim to the assets purchased. Nichols counters that he is entitled to a royalty on all assets conveyed by the Asset Purchase Agreement to which the May Consulting Agreement was attached. He also argues that his royalty entitlement is not precluded by YJ USA's sale of the assets to YJ Industrial and that such entitlement does not depend on who owns the assets.

Exhibit A to the May Consulting Agreement states that YJ USA "agrees to pay to [Nichols] two percent (2%) of the gross revenues generated by the Assets during the five (5) year period ending May 31, 2010, including, without limitation, revenues attributable to the sale, lease, license or other disposition of the Assets or any rights therein." YJ USA's Resp., App. 106. The phrase

"including, without limitation, revenues attributable to the ***sale, lease, license or other disposition of the Assets or any rights therein***" merely describes the revenues upon which YJ USA agreed to pay Nichols two percent. This language reflects that YJ USA's sale of the Assets was not prohibited, but that YJ USA was required to pay Nichols two percent of the revenues generated by such sale.

YJ Industrial also contends that because Nichols is not a party to the asset purchase agreement between it and YJ USA, he has no claim to the assets purchased. Nichols argues that his royalty entitlement is not precluded by YJ USA's sale of the assets to its alter ego, YJ Industrial. Because genuine issues of material fact exist as to Nichols's alter ego claim and any royalty payments to which he would be entitled would not be extinguished by YJ USA's sale of the assets to itself, a genuine issue of material fact also exists regarding whether Nichols's entitlement to royalty payments terminated upon the sale of the assets. Accordingly, YJ Industrial is not entitled to judgment as a matter of law on Nichols's claim based on this theory. The court does not reach YJ Industrial's argument that Nichols has no claim to any revenues generated by the intellectual property assets because it is not relevant to the court's determination of whether Nichols's royalty entitlement terminated upon the sale of the assets.

### 4. Nichols's Fraudulent Transfer Claim

YJ Industrial contends that Nichols's fraudulent transfer claim fails because such transfer was authorized by the May Consulting Agreement and was made for reasonably equivalent value. Nichols counters that YJ USA's sale of the remaining assets to YJ Industrial was an attempt to avoid its liability for paying his royalties and that the sale was not for reasonably equivalent value because YJ USA is a mere tool or business conduit of YJ Industrial such that the transfer was made to itself.

TUFTA prohibits transfers made with the actual intent of hindering, delaying, or defrauding a creditor. Tex. Bus. & Comm. Code § 24.005(a)(1). In determining actual intent, the court may consider, among other factors, whether:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* § 24.005(b). TUFTA also prohibits transfers made without receiving a reasonably equivalent value in exchange if the debtor met either of the following criteria:

> was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or [] intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*Id.* § 24.005(a)(2).

The nature of the relationship between YJ Industrial and YJ USA is key to the determination of Nichols's fraudulent transfer claim. For example, it relates directly to whether the transfer was to an insider and whether YJ USA retained possession or control of the transferred assets after the transfer. Therefore, the assessment of YJ USA's relationship with YJ Industrial must precede, or

be made contemporaneously with, any determination about whether YJ USA transferred the assets to YJ Industrial with an actual intent of hindering, delaying, or defrauding Nichols and whether the transfer was made for reasonably equivalent value. The court has already determined that genuine issues of material fact exist regarding YJ USA's relationship with YJ Industrial that must be determined by the trier fact. Because genuine issues of material fact exist regarding YJ USA's relationship with YJ Industrial and the nature of this relationship is key to the determination of Nichol's fraudulent transfer claim, genuine issues of material fact also exist regarding Nichols's fraudulent transfer claim. Accordingly, YJ Industrial is not entitled to judgment as a matter of law on this claim.

### 5. Contractual Relationship Between YJ Industrial and Nichols

YJ Industrial contends that Nichols's breach of contract claim fails because there is no contractual relationship between it and Nichols. Nichols counters that an implied contract exists between him and YJ Industrial such that it is obligated to pay his two percent royalty.

A contract implied in fact arises when a mutual intention to contract may be implied from the acts and conduct of the parties. *Haws & Garrett General Contractors, Inc. v. Gorbett*, 480 S.W.2d 607, 609 (Tex. 1972). A contract implied in law, or a quasi-contract, is "an obligation imposed by law regardless of any actual agreement between the parties." *Walker v. Cotter Prop., Inc.*, 181 S.W.3d 895, 900 (Tex. App.–Dallas 2006, no pet.) (citation omitted). The equitable doctrine "allow[s] for recovery of damages to prevent a party from obtaining a benefit from another by fraud, duress, unjust enrichment, or because of an undue advantage." *Hubbard v. Shankle*, 138 S.W.3d 474, 487 (Tex. App.–Fort Worth 2004, pet. denied) (citation omitted). Unjust enrichment "applies principles of restitution to disputes where there is no actual contract and is based on the

equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution." *Walker*, 181 S.W.3d at 900.

Nichols argues that there is a contract implied in fact because despite its knowledge that YJ USA was obligated to pay him a royalty on the assets, YJ Industrial chose to make profitable use of such assets after they received them from YJ USA. That YJ Industrial knew of YJ USA's obligation, however, is insufficient to imply its intention to contract. This conclusion is evident from the language of the Second Asset Purchase Agreement that specifically excepts YJ USA's obligations under the May Consulting Agreement from the liabilities that YJ Industrial assumed in the purchase. *See* YJI's MSJ, App. 35. Under these facts, no mutual intention to contract may be implied from the acts and conduct of the parties. Accordingly, there is no genuine issue of material fact regarding whether there is a contract implied in fact, and YJ Industrial is entitled to judgment as a matter of law on this theory.

Nichols's argument that there is a contract implied by law is based upon his fraudulent transfer claim. In his response, Nichols states the following:

> YJI purportedly took the assets in the fake sale in 2006 with full knowledge of the 2% commission obligation, and did so with the clear intent to breach and interfere with the payment of those commissions by causing them not to be paid at all. The "sale" was for the sole purpose of hindering and delaying Nichols['s] collection of his money, by making it difficult and expensive to do so.

Pl.'s Resp. to YJ Indus.' Mot. for Summ. Judgment ("Pl.'s Resp. to YJI") 40. Because genuine issues of material fact exists regarding Nichols's fraudulent transfer claim and that claim forms the basis for his contention that a contract implied in law exists, genuine issues of material fact also exist regarding this theory of contractual liability against YJ Industrial. Accordingly, YJ Industrial is not entitled to judgment as a matter of law based on this theory.

### 6. Nichols's Claims for Misappropriation and Interference With a Contract

YJ Industrial contends that Nichols's claims for misappropriation and interference with a contract fail because he had no interest that could be misappropriated and it did not cause YJ USA to act outside its rights under the May Consulting Agreement. Nichols contends that his interference claim applies only if YJ USA and YJ Industrial are found to be separate entities, that YJ Industrial misappropriated his royalties when it refused to pay two percent on the revenues it generated from the assets YJ USA sold to it, and that fact issues exist regarding whether YJ Industrial intentionally interfered with the payment of his royalties.

Although Nichols incorrectly labels his cause of action as one for "misappropriation," he alleges a cause of action for conversion. Moreover, he makes arguments and cites cases applicable to conversion. Therefore, the court treats Nichols's misappropriation claim as one for conversion. Conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997) (citation omitted). To recover for tortious interference with an existing contract, a plaintiff must establish the following: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996).

Nichols contends that YJ Industrial misappropriated his royalties when it "structured a fake sale of the assets" and refused to pay him royalties on the revenues generated from those assets. Because genuine issues of material fact exist regarding Nichols's alter ego and fraudulent transfer claims, genuine issues of material fact also exist regarding Nichols's misappropriation claim and his

entitlement to royalties on the revenues generated by YJ Industrial. Accordingly, YJ Industrial is not entitled to judgment as a matter of law on Nichols's misappropriation claim.

Nichols also contends that genuine issues of material fact exist on his claim that YJ Industrial intentionally interfered with the payment of his royalties. YJ Industrial counters that because the May Consulting Agreement permitted YJ USA to sell the assets, its purchase of those assets could not constitute unlawful interference. The court agrees. Nichols's interference claim applies only if YJ USA and YJ Industrial are found to be separate entities. Nichols states that "[t]here are no restrictions upon the resale of those assets by YJ USA, but at the same time, there is no extinguishment of the commission obligation in the event of a sale." Pl.'s Resp. to YJI 38-39. In so stating, Nichols concedes that YJ USA was permitted to sell the assets. He now argues, without citation to supporting law or evidence that the parties so intended, that if YJ USA sold the assets, it should include a provision that requires the purchaser to report its sales to YJ USA so that it could pay Nichols royalties on the sales. The plain language of the May Consulting Agreement imposes no such duty on YJ USA. *See* Pl.'s Resp. App. 21. Accordingly, no genuine issue of material fact exists regarding Nichols's claim for interference with a contract, and YJ Industrial is entitled to judgment as a matter of law on this claim.

### 7.    Joint Liability With YJ USA

As an alternative to its argument that it should not be held jointly and severally liable for YJ USA's conduct, YJ Industrial contends that it is entitled to summary judgment on the breach of contract, declaratory judgment, and accounting claims against YJ USA because such claims should be dismissed against YJ USA. In support of this contention, YJ Industrial reurges the bases for summary judgment set forth by YJ USA in its motion for summary judgment. The court has already

considered these arguments in connection with YJ USA's motion for summary judgment. All rulings made with respect to YJ USA's motion for summary judgment apply equally to YJ Industrial's motion, and the court will not separately address the duplicative arguments.

### 8. Nichols's Agency Allegation

Nichols alleges that YJ USA was acting as YJ Industrial's agent when it entered into the May Consulting Agreement. YJ Industrial contends that this allegation is unsupported by the record because Nichols knew that he was entering into the agreement with YJ USA rather than YJ Industrial and because there is no evidence that YJ USA had actual or apparent authority to enter into the May Consulting Agreement on YJ Industrial's behalf. In response, Nichols reiterates the facts alleged in support of his alter ego theory and, relying on these facts, contends that "there is no aspect of YJ USA's business which YJI, through Lin, does not control. And for sure, YJI adopted the purchase of the JumpKing assets as its own act." Pl.'s Supp. Reply 8. An agent is someone who is authorized by another to transact business or manage some affair for that person or entity. *Texas Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 650 (5th Cir. 2001); *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex. App.–Dallas 2007, pet. denied) (citation omitted). "An agency relationship is created when the principal: (1) intentionally confers authority on the agent; (2) intentionally allows an agent to believe it has authority; or (3) allows an agent to believe it has authority to act by lack of due care." *Id.* Nichols points to no evidence that establishes that YJ Industrial intentionally conferred authority on YJ USA to enter into the May Consulting Agreement on its behalf, intentionally allowed YJ USA to believe it had such authority, or allowed YJ USA to believe it had such authority by lack of due care. He instead relies on his characterization of the evidence to support his contention. Accordingly, there is no genuine issue

of material fact with respect to Nichols agency claim, and YJ Industrial is entitled to judgment as a matter of law on this claim.

### 9. Nichols's Claim for Punitive Damages

YJ Industrial incorporates YJ USA's argument that Nichols is not entitled to recover punitive damages because the allegations in his complaint are legally insufficient to support such an award and because TUFTA does not provide for recovery of punitive damages. Previously herein, the court concluded that Nichols's pleadings were sufficient to provide notice that he sought punitive damages and that TUFTA authorizes an award for punitive damages. Accordingly, YJ Industrial is not entitled to judgment as a matter of law on Nichols's request for punitive damages.

### C. Plaintiff's Renewed Motion for Summary Judgment Against YJ Industrial

Nichols moves for summary judgment on some of the affirmative defenses YJ Industrial raised in light of his alter ego and single business enterprise claims. The court considers each argument in turn.

### 1. Unconscionability

In its second amended answer, YJ Industrial asserts that Nichols's claims are barred because enforcement of the May Consulting Agreement would be procedurally and substantively unconscionable. Nichols contends that he is entitled to summary judgment on this affirmative defense because Chapter 2 of the Uniform Commercial Code (codified in the Texas Business and Commerce Code) does not apply to contracts for the rendition of services and because the agreement is neither substantively nor procedurally unconscionable.

Texas law provides unconscionablity defenses by statute and at common law. *See* Tex. Bus. & Comm. Code § 2.302 (Vernon 1994); *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817,

821 (Tex. App.–San Antonio 1996, no writ) (considering definitions of unconscionability under the Deceptive Trade Practices Act, the UCC, and common law); *see also Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991) (Gonzalez, J., concurring) (discussing unconscionability at common law and under UCC).

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Tex. Bus. & Comm. Code § 2.302(a). To prevail on this defense, the party asserting it must establish that the contract is both procedurally and substantively unconscionable. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse*, 844 F.2d 1174, 1184 (5th Cir. 1988) (citing *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ. App.–Texarkana 1975, no writ). The circumstances surrounding both prongs of the unconscionability defense "must be sufficiently shocking or gross to compel the courts to intercede." *El Paso Natural Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 62 (Tex. App.– Amarillo1998), *rev'd on other grounds*, 8 S.W.3d 309 (Tex. 1999).

Procedural unconscionability "means that oppression and unfairness must taint the negotiation process leading to the agreement's formation. *Id.* at 61 (citation omitted). Such unconscionability must be assessed as of the time it occurred by evaluating the totality of the circumstances using the following factors: "the presence of deception, overreaching, and sharp business practices, the absence of a viable alternative, and the relative acumen, knowledge, education, and financial ability of the parties involved." *Id.* (citation and internal number omitted). Substantive unconscionability considers "the fairness, or oppressiveness of the contract itself" based on the totality of the circumstances as of the time it occurred. *Id.*

YJ Industrial is entitled to base its unconscionability defense on common law as well as Chapter 2 of the Uniform Commercial Code ("UCC").  *See Wade*, 524 S.W.2d at 86 ( recognizing that section 2.302 "has been applied to numerous transactions outside the coverage of Article 2 of the Code"); *DeLanney*, 809 S.W.2d at 497-99 (applying section 2.302 to services contract).  To prevail on this defense, YJ Industrial must establish both procedural and substantive unconscionability.

YJ Industrial presents evidence to establish procedural unconscionability.  It cites evidence that ICON originally required a two percent royalty as part of the Asset Purchase Transaction, that Nichols did not recall informing YJ USA when ICON agreed to omit the two percent royalty term, that the first draft of Exhibit A to the May Consulting Agreement ("Exhibit A") was sent just before noon on the day of closing, and that the e-mail sending Exhibit A contained the following language: "The only thing that approaches a substantive change is the addition of some collateral." YJ Industrial's Resp. to Pl.'s Mot. Summ. J. ("YJI's Resp."), App. 224.  Nichols, on the other hand, presents evidence to establish that there was no procedural unconscionability.  He cites evidence that Adams chose not to read the May Consulting Agreement and Exhibit A at closing, a Utah law firm edited and offered changes to the closing documents on YJ USA's behalf, and that "there was nothing about the Consulting Agreement that Nichols could have advised him about that he could not have determined for himself simply by reading the document."  Pl.'s Mot. for Summ. J. 13 (citing Adams Dep. 83:14-19).  Each side has presented evidence in support of its position.  Therefore, genuine issues of material fact exist regarding whether the May Consulting Agreement was procured by procedural unconscionability.  Because this fact issue exists, the court need not

address substantive unconscionability, and Nichols is not entitled to judgment as a matter of law on YJ Industrial's unconscionability affirmative defense.

## 2. Unilateral and Mutual Mistake

YJ Industrial asserts that Nichols's claims are barred by the doctrines of unilateral and mutual mistake. Nichols contends that he is entitled to summary judgment on this affirmative defense because there is no evidence of mistake, there is no evidence that the parties were laboring under a mutual mistake of the same material fact, and there is no evidence of a unilateral mistake. Because YJ Industrial responds only to Nichols's mutual mistake arguments, the court determines that it has abandoned its unilateral mistake affirmative defense and waived its right to pursue it at trial. *Cummings*, 453 at 324-25. Therefore, the court considers only the affirmative defense of mutual mistake.

Under Texas law, the defense of mutual mistake allows parties to avoid an agreement formed under a misconception or mistake of a material fact. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). The defense applies only when the parties "have acted under the same misunderstanding of the same material fact." *Id.* To avoid summary judgment on a mutual mistake defense, the party asserting it must present evidence of each element of the defense. *Green v. Morris*, 43 S.W.3d 604, 606 (Tex. App.–Waco 2001, no pet.). Therefore, the party asserting the mutual mistake affirmative defense must present evidence that there was a mistake of fact, held mutually by the parties, which materially affected the agreed-upon exchange. *Id.*

YJ Industrial presents evidence that YJ USA and Nichols shared the same misunderstanding that Nichols was obligated to provide ongoing services under the May Consulting Agreement. It referenced the current terms of the May Consulting Agreement as evidence that the mistake materially affected the agreed-upon exchange. According to YJ Industrial, the May Consulting

Agreement reflects YJ USA's alleged payment obligation, but fails to reflect the parties' understanding that Nichols was to provide ongoing services in exchange for the alleged payment obligation.  Such evidence is sufficient to avoid summary judgment, and Nichols is therefore not entitled to judgment as a matter of law as to this affirmative defense.  *See Green*, 43 S.W.3d at 606 (holding party asserting mistake of fact defense must present some evidence of mistake of fact elements to avoid summary judgment).

### 3.    Fraudulent Inducement

YJ Industrial asserts that Nichols's claims are barred by the doctrine of fraudulent inducement because he failed to disclose information for which he had a duty to disclose and because he did so with the intent to induce YJ USA to enter into the May Consulting Agreement.  Nichols contends he is entitled to summary judgment on this affirmative defense because the failure to disclose his layman's interpretation of the agreement is not actionable as fraud, there is no evidence that a special relationship existed between YJ USA and Nichols such that a duty to disclose arose, there is no evidence of non-disclosure, and the disclaimer-of-reliance provision in the May Consulting Agreement precludes YJ USA and YJ Industrial from asserting the fraudulent inducement defense.

To establish fraudulent inducement by omission, YJ Industrial must prove that Nichols "(1) concealed or failed to disclose a material fact within [his] knowledge that [he] had a duty to disclose (2) knowing [YJ USA was] ignorant of the facts and did not have an equal opportunity to discover the truth (3) with the intent to induce [YJ USA] to act, and (4) [YJ USA] suffered injury as a result of [its] acting without knowledge of the undisclosed facts."  *BP America Prod. Co. v. Marshall*, -- S.W.3d --, No. 04-06-00478-CV, 2008 WL 5169635 at *4 (Tex. App.–San Antonio 2008).

YJ Industrial presents evidence that Nichols failed to disclose that, based on his negotiations, ICON agreed to omit the two percent royalty provision in the Asset Purchase Agreement that it originally requested, but to which YJ USA refused to agree. Nichols Dep. 128:7-130:2, YJI's Resp., App. 54-56. This fact is material because, according to YJ Industrial, Exhibit A contains a broader version of this two percent royalty.

YJ Industrial also contends that Nichols failed to disclose the following facts: (1) Exhibit A to the May Consulting Agreement included a two percent royalty, which was first revealed hours before closing; (2) the May Consulting Agreement included terms to which YJ USA had not agreed and that were not consistent with the parties' prior discussions; and (3) his interpretation of the compensation, to which he was entitled pursuant to Exhibit A, until after closing. The evidence to which YJ Industrial cites establishes that (1) Nichols had no knowledge of whether YJ USA or Craig Adams was sent a copy of Exhibit A prior to the morning of closing; (2) Exhibit A included a two percent royalty provision upon which the parties' had not agreed; and (3) had Craig Adams understood Nichols's interpretation of Exhibit A, he would not have signed the May Consulting Agreement. *See* Nichols Dep. 173:24-175:6,122:25-123:8, YJI's Resp. App. 77-79, 48-49; Adams Dep. 133:11-18, 146:1-5, YJI's Resp. App. 115, 119. These assertions are merely a repackaging of YJ Industrial's contention that Exhibit A contains a broader version of the two percent royalty that Nichols failed to disclose that ICON agreed to omit from the Asset Purchase Agreement and to which YJ USA had not agreed. Therefore, they may not form separate bases for YJ Industrial's fraudulent inducement defense. The court now analyzes whether Nichols had a duty to disclose that Exhibit A contained a broader version of the two percent royalty that ICON agreed to omit from the Asset Purchase Agreement and to which YJ USA had not agreed.

Texas law imposes a duty to disclose in the following four situations:

> (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression.

*Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex. App.–Texarkana 2000, pet. denied). Whether a duty to disclose exists is a question of law. *Id.*

Nichols contends that he did not owe a duty to YJ USA because no formal or informal fiduciary relationship existed between them. YJ Industrial contends that Nichols owed a duty to YJ USA because there was a special or fiduciary relationship between them and because he failed to disclose new information that made an earlier representation misleading or untrue. The court agrees with YJ Industrial.

Citing *Gulf States Theatres of Texas, Inc. v. Hayes*, Nichols contends that a consultant is not a fiduciary. 518 S.W.2d 604, 605 (Tex. Civ. App.–Beaumont 1975, no writ). Nichols's reliance on *Gulf States Theatres* is misplaced. The *Gulf States Theatres* court held that a consultant was not an agent when his only duty was to, if called upon, recommend actions that in his judgment would be beneficial to the company. *Id.* at 606. The court defined an agent as one "who undertakes to transact some business, or to manage some affair for another, by the authority and on account of . . . it." *Id.* at 606. In this case, Nichols agreed to attend various meetings and to, in YJ USA's absence, represent YJ USA's interests. YJI's Resp., App. 4. Therefore, Nichols undertook to transact YJ USA's business and manage its affairs at meetings from which it was absent. Based on this undertaking, Nichols was YJ USA's agent. Because Nichols was YJ USA's agent, a formal

fiduciary duty existed between them. *See United Teachers Assoc. Ins. Co. v. MacKeen & Bailey Inc.*, 99 F.3d 645 (5th Cir. 1996) (principal/agent relationship fiduciary as a matter of law).

YJ Industrial also presented evidence that Nichols had a duty to disclose because he discovered new information that made an earlier representation misleading or untrue. Nichols testified that he sent YJ USA a draft of the Asset Purchase Agreement, which included a provision that obligated YJ USA for three years to pay the seller two percent of any revenue attributable to products bearing the brand. Nichols Depo. 86:1-22, YJI's Resp., App. 33. He also testified that YJ USA objected to this term. Nichols Depo. 122:13-21, *Id.* at 48. Nichols further testified that he failed to disclose that the seller agreed to omit the two percent royalty provision. Nichols Depo.128:7-16, *Id.* at 54. Therefore, YJ Industrial presents evidence that Nichols discovered new information that made an earlier representation misleading or untrue, and a duty to disclose arose between Nichols and YJ USA.

Nichols argues that the law charges parties with knowledge of the contents of contracts they sign. This argument is incomplete. "Although the law charges parties with knowledge of the contents of the contracts they sign, proof of fraudulent misrepresentations and reliance on such misrepresentations may permit parties to void their contracts." *Amouri v. Southwest Toyota, Inc.*, 20 S.W.3d 165, (Tex. App.–Texarkana 2000, pet. denied). To establish its fraud defense, YJ Industrial was required to show that Nichols engaged in misrepresentation or concealment. *See Id.* at 170. As the court noted above, YJ Industrial presented evidence that Nichols concealed that the seller agreed to omit the two percent provision from the Asset Purchase Agreement. Because YJ USA's failure to read the Asset Purchase Agreement and May Consulting Agreement is excused based upon Nichols's misrepresentation or concealment, a genuine issue of material fact exists regarding whether YJ USA had an equal opportunity to discover the truth about their contents.

To establish its fraudulent inducement defense, YJ Industrial must also show that Nichols acted with intent to induce YJ USA to enter the May Consulting Agreement. Because Nichols failed to argue that no genuine issue of material fact exists with respect to this element, the court does not address it.

Finally, to establish its fraudulent inducement defense, YJ Industrial must show that it suffered injury as a result of acting without knowledge of the undisclosed facts. Nichols contends that YJ Industrial failed to establish this element because the May Consulting Agreement contains the following disclaimer of reliance clause: **EACH PARTY HAS READ THIS AGREEMENT CAREFULLY AND UNDERSTANDS AND ACCEPTS THE OBLIGATIONS THAT IT IMPOSES WITHOUT RESERVATION.**" Pl's Mot. for Summ. J. Against YJ Indus. ("Pl.'s MSJ-YJI"), App. 21. He also contends that this element was not established because the May Consulting Agreement contains the following merger clause: "This Agreement sets forth the entire agreement between [YJ USA] and [Nichols] relating to the subject matter hereof and supersedes and replaces all prior discussions and agreements between [Nichols] and [YJ USA], oral or written. *Id.* YJ Industrial argues that this language does not disclaim reliance. The court agrees.

Under Texas law, a disclaimer of reliance clause must "clearly express[] the parties' intent to waive fraudulent inducement claims[] or [] disclaim[] reliance on representations about specific matters in dispute." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). The above referenced language in the May Consutling Agreement does neither. In *Schlumberger*, for example, the parties included the following disclaimer language:

> [E]ach of [the Swansons] expressly warrants and represents and does hereby state . . . and represent . . . that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that none of us is relying upon any statement or representation of any agent of the parties being released

> hereby. Each of us is relying on his or her own judgment and each has been represented by Hubert Johnson as legal counsel in this matter. The aforesaid legal counsel has read and explained to each of us the entire contents of this Release in Full, as well as the legal consequences of this Release. . . .

*Id.* at 180. The parties in *Schlumberger* clearly expressed an intent to disclaim reliance on any representations and expressly relied only on his or her own judgment. The parties in this case, however, merely expressed that the agreement contained the entire understanding between the parties, that they read the agreement, and that they understood and accepted the obligations imposed. Such language is not tantamount to a clear expression of the parties' intent to waive a fraudulent inducement claim or to disclaim reliance on representations about specific matters in dispute. Because the court concludes that this language does not constitute a disclaimer of reliance, it does not reach whether a disclaimer of reliance provision bars the fraudulent inducement defense under the circumstances presented in this case.

YJ Industrial presented evidence of each of the failure to disclose elements, and the language cited by Nichols does not constitute a disclaimer of reliance. Therefore, genuine issues of material fact exist as to YJ Industrial's fraudulent inducement affirmative defense, and Nichols is not entitled to judgment as a matter of law of this defense.

### 4. Breach of Fiduciary Duty

YJ Industrial asserts that Nichols's claims are barred because Nichols breached the fiduciary duty owed to YJ USA. Nichols contends that he is entitled to summary judgment on this affirmative defense because no fiduciary duty existed between Nichols and YJ USA, Nichols did not breach any fiduciary duty that may have existed, and YJ Industrial's breach of fiduciary duty defense sounds in contract rather than in tort. Because Nichols's final argument - that YJ Industrial's breach of

fiduciary duty defense sounds in contract rather than in tort - is dispositive, the court addresses it only.

Under Texas law, the general rule is that a party may only maintain a tort claim in addition to a claim for breach of contract if the tort claim is independent of the contract claim. *See DeLanney*, 809 S.W.2d at 494. To determine whether a tort claim is independent of a contract claim, the court analyzes the source of the duty and the nature of the remedy. *Id.* If a party seeks damages for breach of a duty created under a contract, the claim sounds only in contract, but if a party seeks damages for breach of a duty imposed by law, the claim sounds in tort. *Id.* When the loss or damage is the loss to the subject of the contract, the claim sounds in contract. *Id.* at 495.

YJ Industrial argues that "Nichols bore a special relationship with YJ USA built on confidence and trust" such that his fiduciary duty to YJ USA arose independently of any consulting agreement. Elsewhere in its response brief, however, YJ Industrial argues that the November 2004 and March 2005 consulting agreements created a formal fiduciary relationship between Nichols and YJ USA and that an informal fiduciary relationship existed because Nichols's consulting relationship with YJ USA was "a relationship of trust." *See* YJ I's Resp. App. 42-46. These arguments clearly establish that Nichols's duties to YJ USA arose solely from the November 2004 and March 2005 consulting agreements. YJ USA's damages, payments made in excess of the $4000 per month to which Nichols was entitled under the March 2005 consulting agreement, were only for the economic loss caused by Nichols's alleged breach of those duties. Therefore, no independent tort exists, and YJ Industrial's breach of fiduciary duty defense sounds in contract. Accordingly, no genuine issues of material fact exist as to the availability of this defense, and Nichols is entitled to judgment as a matter of law on YJ Industrial's breach of fiduciary duty affirmative defense.

### D.    Plaintiff's Motion for Summary Judgment against YJ USA

Nichols moves for summary judgment on some of the affirmative defenses and counterclaims of YJ USA.  The court has already considered some of these arguments in connection with its ruling on Plaintiff's Motion for Partial Summary Judgment as to Certain Affirmative Defenses of Defendant Yeong Industrial (M) SDN. BHD.  All rulings made with respect to that motion apply equally to Plaintiff's Motion for Partial Summary Judgment as to Certain Affirmative Defenses and Claims Asserted by Defendant YJ USA Corp., and the court will not separately address these arguments. The court considers each of the remaining arguments in turn.

### 1.    Ambiguity

In its answer to Plaintiff's Second Amended Original Complaint, YJ USA contends, in the alternative, that the May Consulting Agreement is ambiguous.  Nichols contends that he is entitled to summary judgment on this affirmative defense because the parties' disagreement about the correct interpretation of the contract does not constitute ambiguity.  YJ USA counters that its ambiguity defense is viable because a genuine issue of material fact is created by the parties' disagreement about the proper interpretation of the contract and both parties filed motions for summary judgment seeking affirmative relief.

 Texas law provides that "[i]f a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous.  If, however, the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous."  *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004); *see also Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  A contract is not ambiguous merely because the parties disagree about interpretation of one of its terms.  *Denning*, 394 F.3d at 392.

In this case, Exhibit A states that YJ USA "agrees to pay to [Nichols] two percent (2%) of the gross revenues generated by the Assets during the five (5) year period ending May 31, 2010, including, without limitation, revenues attributable to the sale, lease, license or other disposition of the Assets or any rights therein." The May Consulting Agreement defines "Assets" as certain assets that YJ USA proposes to acquire from Jump King, Inc. pursuant to the Asset Purchase Transaction. The Asset Purchase Agreement reflects that Jump King, Inc. conveyed the inventory associated with the business and that ICON conveyed the intellectual property rights used in connection with the business. *See* Pl.'s Resp., App. 2-3. The agreement is not ambiguous merely because the parties disagree about the interpretation of a term. Because the plain language of the May Consulting Agreement is not subject to two or more reasonable interpretations, the agreement is not ambiguous. Accordingly, no genuine issue of material fact exists with respect to YJ USA's ambiguity affirmative defense, and Nichols is entitled to judgment as a matter of law on this defense.

### 2. YJ USA's Fraud Counterclaim

The court previously concluded that genuine issues of material fact exist as to YJ USA's fraudulent inducement affirmative defense, and that Nichols is not entitled to judgment as a matter of law on this defense. YJ USA's fraud counterclaim is based on the same conduct as its fraud by omission (fraudulent inducement) defense. *See* YJ USA's Resp. Br. 32. Therefore, genuine issues of material fact also exist as to YJ USA's fraud counterclaim, and Nichols is not entitled to judgment as a matter of law of this claim.

### 3. YJ USA's Negligent Misrepresentation Counterclaim

Nichols contends that he is entitled to summary judgment on YJ USA's negligent misrepresentation counterclaim because (i) the parties were in privity and as such YJ USA cannot assert a negligent misrepresentation claim against Nichols, (ii) YJ USA fails to establish each

element of the cause of action, and (iii) the claim sounds in contract rather than in tort. YJ USA counters that the summary judgment evidence establishes each element of its negligent misrepresentation claim and that the claim does not sound in contract. Like its breach of fiduciary duty defense, the court addresses only Nichols's argument that YJ USA's negligent misrepresentation claim sounds in contract rather than in tort because this argument is dispositive.

As previously stated, under Texas law, the general rule is that a party may only maintain a tort claim in addition to a claim for breach of contract if the tort claim is independent of the contract claim. *See DeLanney*, 809 S.W.2d at 494. To determine whether a tort claim is independent of a contract claim, the court analyzes the source of the duty and the nature of the remedy. *Id.* If a party seeks damages for breach of a duty created under a contract, the claim sounds only in contract, but if a party seeks damages for breach of a duty imposed by law, the claim sounds in tort. *Id.* When the loss or damage is the loss to the subject of the contract, the claim sounds in contract. *Id.* at 495.

In this regard, YJ USA states the following: "Considering that YJ USA regarded Plaintiff as its trusted and learned consultant and authorized agent, it cannot be disputed that YJ USA relied on Plaintiff's representations (and failure to make necessary representations) to their detriment." YJ USA's Resp. Br. 41. Additionally, the evidence to which YJ USA cites in support of this claim establishes that Nichols negotiated the Asset Purchase Transaction on behalf of YJ USA and that YJ USA regarded Nichols as its authorized agent to put the deal together. Nichols Dep. 55:22-56:4, 118:4-9, YJ USA's Resp. App. 12, 16; Adams Dep. 65:9-10, YJ USA's Resp. App. 75. Because Nichols's duty as consultant and agent arose solely from the November 2004 and March 2005 consulting agreements, YJ USA's arguments and evidence establish that Nichols's duties to it arose from the contracts. YJ USA's damages, payments made in excess of the $4000 per month to which Nichols was entitled under the March 2005 consulting agreement, were only for the economic loss

caused by Nichols's alleged breach of those duties. Therefore, YJ USA's negligent misrepresentation counterclaim sounds in contract, and no genuine issues of material fact exist as to this claim. Accordingly, Nichols is entitled to judgment as a matter of law on YJ USA's negligent misrepresentation counterclaim.

### 4.     YJ USA's Negligence Counterclaim

Nichols contends that he is entitled to summary judgment on YJ USA's negligence counterclaim because YJ USA fails to establish each element of the cause of action and the claim sounds in contract rather than in tort. YJ USA counters that the summary judgment evidence establishes each element of its negligence claim and that the claim does not sound in contract. Like its breach of fiduciary duty defense and its negligent misrepresentation claim, the court addresses only Nichols's argument that YJ USA's negligence claim sounds in contract rather than in tort because this argument is dispositive.

The court previously set forth the law applicable to this argument. YJ USA contends that in addition to the duties imposed by the contract, Nichols owed a duty, imposed by common law, to exercise care in performing his consulting services. It argues that Nichols failed to use reasonable care in performing consulting services when, for his own benefit, he allegedly created a royalty obligation that encumbered YJ USA's assets. The result of Nichols's alleged failure to use reasonable care is that the May Consulting Agreement does not reflect the parties' agreement. Such damage is loss to the subject of the contract. When the loss or damage is the loss to the subject of the contract, the claim sounds in contract. *DeLanney,* 809 S.W.2d at 495 (holding defendant's failure to publish advertisement sounded only in contract because liability imposed only because breach of parties' agreement). Moreover, tort obligations are generally imposed to avoid injury to others. *See Id.* at 494 ("Tort obligations are in general obligations that are imposed by law - apart

from and independent of promises made and therefore apart from the manifested intention of the parties - to avoid injury to others.") (citation omitted). As previously stated, the loss in this case is to the subject of the contract, and YJ USA's negligence claim would not exist independently of the breach of contract claim. Therefore, YJ USA's negligence counterclaim sounds in contract, and no genuine issues of material fact exist as to this claim. Accordingly, Nichols is entitled to judgment as a matter of law on YJ USA's negligence counterclaim.

### 5. YJ USA's Breach of Contract Counterclaim

Nichols contends that he is entitled to summary judgment on YJ USA's breach of contract counterclaim because he did not breach prior consulting agreements by entering into the May Consulting Agreement. YJ USA counters that the merger clause in the May Consulting Agreement does not preclude its breach of contract claim based upon the November 2004 and March 2005 consulting agreements and that Nichols has not moved for summary judgment on the elements of its counterclaim.

The May Consulting Agreement contains the following merger clause: "This Agreement sets forth the entire agreement between [YJ USA] and [Nichols] relating to the subject matter hereof and supersedes and replaces all prior discussions and agreements between [Nichols] and [YJ USA], oral or written." YJ USA's Resp., App. 104, ¶9. As YJ USA correctly states, Nichols testified that "the process and compensation related to the sale of the assets [were] totally separate and independent from the consulting agreement that [the parties] had in effect at that time." Nichols Dep. 71:4-8, YJ USA's Resp., App. 13; *see also* Nichols Dep. 189:15-17, YJ USA's Resp., App. 32. Therefore, the prior consulting agreements do not relate to the subject matter of the May Consulting Agreement, and the merger clause does not preclude YJ USA's breach of contract claims based on the prior agreements. Because YJ USA's breach of contract claim is not precluded by the

merger clause in the May Consulting Agreement and Nichols failed to move for summary judgment on the elements of the claim, genuine issues of material fact exist as to YJ USA's breach of contract counterclaim. Accordingly, Nichols is not entitled to judgment as a matter of law on this claim.

### E. Plaintiff's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and YJ USA's Request for Leave to Amend

Plaintiff renewed his Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. YJ USA contends that because Nichols's motion for summary judgment reasserts the arguments in his motion to dismiss and the court has not yet ruled on the motion to dismiss, the court should deny Nichols's motion for summary judgment. In the alternative, YJ USA requests that if the court is persuaded by Nichols's motion to dismiss, it should be granted leave to amend its counterclaims before they are addressed on summary judgment.

YJ USA's contentions are now moot. Plaintiff's original motion to dismiss was filed on June 18, 2007. On February 6, 2008, the court denied this motion as moot because the arguments were duplicative of those advanced in Nichols's motion for summary judgment. The court stated that it would consider the arguments when it ruled on Plaintiff's motion for summary judgment. Therefore, this motion was no longer before the court, and it should not have been renewed. Moreover, on February 15, 2008, the court granted Plaintiff leave to amend his complaint and denied without prejudice several related motions. Plaintiff's motion to dismiss was not among those motions that the court permitted to be renewed. Accordingly, the court **denies** Plaintiff's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

In light of this ruling and because YJ USA filed an Answer to Plaintiff's Second Amended Original Complaint and Counterclaim Against Plaintiff on February 29, 2008, YJ USA's contentions are now moot, and the court will not address them further.

## IV.    Conclusion

For the reasons herein stated, no genuine issues of material fact exist as to Nichols's claims for declaratory judgment, accounting, single business enterprise, interference with a contract, agency, and his contract implied in fact theory.  Accordingly, the court **grants** YJ USA's Renewed and Supplemental Motions for Summary Judgment and YJ Industrial' Renewed and Supplemental Motions for Summary Judgment with respect to these claims, and **denies** these motions in all other respects.  YJ USA's objections to Nichols's summary judgment evidence are **overruled as moot**. Only Nichols's claims for alter ego, fraudulent transfer, breach of contract, misappropriation, punitive damages, and his contract implied in law theory remain for disposition at trial.

Additionally, no genuine issues of material fact exist as to YJ Industrial's lack of consideration, unilateral mistake, and breach of fiduciary duty affirmative defenses.  Accordingly, the court **grants** Plaintiff's Renewed Motion for Summary Judgment Against YJ  Industrial as to these defenses and **denies** the motion in all other respects.  The following YJ Industrial affirmative defenses remain for disposition at trial: lack of standing; estoppel; YJ Industrial caused no injury to Nichols; unclean hands; setoff; fraudulent inducement; unconscionability; mutual mistake; Chapter 41 of the Texas Civil Practice and Remedies Code; constitutionality of punitive damages request; and YJ Industrial's conduct was not malicious, fraudulent, willful, wanton, reckless, or grossly negligent to support punitive damages award.

Finally, no genuine issues of material fact exist as to YJ USA's ambiguity affirmative defense or its counterclaims for breach of fiduciary duty, negligent misrepresentation, and negligence.  Accordingly, the court **grants** Plaintiff's Motion for Summary Judgment against YJ USA as to these defenses and counterclaims and **denies** the motion in all other respects.  The court

**denies** Plaintiff's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).  The following YJ USA affirmative defenses remain for disposition at trial: payment, unconscionability, fraudulent inducement, interpretation, mistake, ratification/waiver/estoppel, unconstitutionality of punitive damages, and Chapter 41 of the Texas Civil Practice and Remedies Code.  Its fraud, breach of contract, and refund/offset counterclaims also remain for disposition at trial.

*No further dispositive motions may be filed without leave of court*.

**It is so ordered** this 18th day of March, 2009.

Sam A. Lindsay
United States District Judge