IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| A.G. NICHOLS, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-2366-L** |
| | § | |
| YJ USA CORP. and YEONG JEOU | § | |
| INDUSTRIAL (M) SDN. BHD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Objections to Portions of Magistrate Judge Sanderson's November 20, 2009 Order, filed December 11, 2009. After consideration of the magistrate judge's November 20, 2009 order, objections, response, reply, briefs, record, and applicable law, the court **overrules** Plaintiff's Objections to Portions of Magistrate Judge Sanderson's November 20, 2009 Order.

**I.    Background**

On September 4, 2009, the court recommitted Defendant YJ USA Corp.'s Motion to Compel Documents and Testimony Withheld by Plaintiff Under Claim of Privilege (originally filed December 7, 2007) to United States Magistrate Judge Wm. F. Sanderson, Jr., for hearing and determination. The magistrate judge entered his order on November 20, 2009, and granted the motion to compel. Plaintiff A.G. Nichols, Jr. ("Nichols") filed objections to the magistrate judge's order on December 11, 2009.

Starting in November 2004, Nichols and Defendant YJ USA Corp. ("YJ") entered into a series of consulting agreements. Pursuant to these agreements, Nichols became YJ's consultant and

**Memorandum Opinion and Order – Page 1**

agent; beginning in March 2005, he negotiated an asset purchase agreement ("APA") between YJ and a defunct trampoline company, JumpKing, Inc. ("JumpKing"). The APA was ultimately executed on May 31, 2005, and resulted in YJ purchasing JumpKing assets. In the course of the APA transaction, as well as in his prior March negotiations, Nichols retained the Winstead law firm ("Winstead"), which negotiated, drafted, and edited the APA. YJ retained counsel from the Schwabe, Williamson & Wyatt law firm ("Schwabe") during the same transaction. It is undisputed that YJ reimbursed Nichols for all legal fees he incurred from retaining Winstead at the request of Nichols under the ambit of his consultancy relationship.

YJ now wishes to compel the production of documents revealing communications made between Winstead and Nichols during the course of the May 31, 2005 APA transaction and Nichols's prior March 2005 negotiations with JumpKing. Nichols refuses to produce these documents under the claim of attorney-client privilege. YJ contends, however, that Nichols retained Winstead on YJ's behalf and that it was Winstead's client. Accordingly, YJ asserts that no attorney-client privilege existed between Nichols and Winstead that would deprive YJ of discovering those communications.

With respect to the March 2005 negotiations, the magistrate judge determined that Nichols had no privilege because he, as YJ's agent, hired Winstead on YJ's behalf. With respect to the May 2005 APA transaction, the magistrate judge concluded that Nichols hired Winstead to represent his own interests but any resulting attorney-client privilege was vitiated by YJ proving the crime-fraud exception. Accordingly, the magistrate judge determined that YJ was entitled to discover communications between Nichols and Winstead from the March 2005 negotiations and May 2005 transaction; he granted the motion to compel. The court now considers Nichols's objections to the magistrate judge's order and reviews the magistrate judge's findings for clear error.

**Memorandum Opinion and Order – Page 2**

## II.  Standard of Review

A magistrate judge may rule directly on a nondispositive pretrial motion. 28 U.S.C. § 636(b)(1)(A). A district court may modify or set aside these rulings only if they are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The "clearly erroneous" standard applies to the magistrate judge's factual determinations. *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994). A magistrate judge's determination is "clearly erroneous" when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 481 (N.D. Tex. 2001) (internal citation omitted). The "contrary to law" standard applies to the magistrate judge's legal conclusions. *Smith*, 154 F.R.D. at 665. The district court reviews a magistrate judge's legal conclusions *de novo*. *Id.*

## III.  Analysis

Nichols takes issue with the magistrate judge's findings. He argues that the magistrate judge improperly relied upon an unsigned draft of a consulting agreement, prepared in November 2004, to determine the nature of Nichol's agency relationship with YJ during the March 2005 negotiations with JumpKing. Nichols further argues that the magistrate judge misconstrued the language of the subsequent March 2005 agreement governing the agency relationship between Nichols and YJ. Finally, Nichols contends that the magistrate judge's findings were improper because YJ failed to meet its burden of proof in establishing an agency relationship with Nichols and in showing the crime-fraud exception to Nichols's claim of privilege. The court will address these contentions in turn.

### A. The Governing Consulting Agreements

It is undisputed that YJ sent Nichols a letter on November 1, 2004, summarizing a consulting agreement between the parties. Pl.'s App. (Dkt. 192) at 28. While true that YJ did not sign the November 2004 letter, the court rejects Nichols's argument that the letter was merely an unenforceable draft of a consulting agreement. After setting forth the key terms and nature of the consulting agreement, the November 2004 letter reads, "[b]y signing below, both parties confirm their understanding and acceptance of this agreement." *Id.* As the letter was drafted and delivered by YJ to Nichols, the court determines that the letter's instruction was meant for Nichols; YJ had already adopted the agreement by having written and delivered the letter for Nichols to sign. Accordingly, the magistrate judge's reliance on the November 2004 agreement in his analysis was not misplaced.

It is also undisputed that YJ and Nichols memorialized a subsequent consulting agreement in the form of another letter, sent by Nichols to YJ on March 9, 2005. *Id.* at 30. The March 2005 letter is signed by both parties and contains largely the same terms as the November 2004 letter. The March 2005 letter contains no merger clause, nor does it provide any other indication that it completely supersedes the November 2004 agreement. The court will therefore read the agreements together. The November 2004 letter states that Nichols "may attend and represent [YJ's] best interests at various meetings and other events, or assist [YJ] in other ways that [both parties] agree to." *Id.* at 28. The March 2005 letter states that Nichols "will attend such meetings at such locations as [YJ] direct[s]. In [YJ's] absence at such meetings, [Nichols] will represent [YJ's] interests." *Id.* at 30. The language of these agreements, read together, makes clear that Nichols had the authority to attend meetings in YJ's stead and represent YJ's interests. When YJ gave Nichols a specific instruction to attend a meeting, he was required to represent YJ's interests only in YJ's absence.

**Memorandum Opinion and Order – Page 4**

There is nothing in the text of either agreement that mandated Nichols to attend *every* meeting on YJ's behalf and to represent YJ's interests under *all* circumstances at such meetings. This was the controlling arrangement during the March 2005 negotiations with JumpKing, up until the closing date of the May 2005 APA transaction.

B.  **Attorney-Client Privilege Existing During the March 2005 Negotiations**

The magistrate judge did not decide whether YJ had an attorney-client relationship with Winstead in March 2005, but he did determine that Nichols, as YJ's agent, retained Winstead on YJ's behalf. After reviewing the parties' agreement, YJ's reimbursement of Nichols's attorney's fees, and the *in camera* materials submitted for inspection, the magistrate judge found that Nichols did not have a personal attorney-client privilege barring YJ from discovering his communications with Winstead. Nichols argues that the magistrate judge misapplied agency law because Nichols had no authority to purchase JumpKing assets on behalf of YJ.

Although the court agrees with Nichols that there is no evidence that Nichols was authorized in March 2005 to purchase JumpKing assets on behalf of YJ, the court is unconvinced that the magistrate judge misapplied agency law. The magistrate judge drew an agency relationship between Nichols and YJ based on Nichols's agreement to represent YJ's interests and his determination that much of the legal work performed by Winstead in March 2005 was for the benefit of YJ.

"Under Texas Law, agency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control." *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (internal quotations and citation omitted). "It is the principal's extent of control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent." *Id.* (internal quotations and citation omitted). A party "who contracts to acquire property from a

**Memorandum Opinion and Order – Page 5**

third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." *GWTP Invs., L.P. v. SES Americom, Inc.*, 497 F.3d 478, 484 (5th Cir. 2007) (quoting Restatement (Second) of Agency § 14K).

Here, Nichols's agreement to represent YJ's interests comports with the foregoing proposition that he agreed to act primarily for the benefit of YJ and not himself.* Nichols states that the March deal contemplated two separate transactions: the first where he would have purchased JumpKing assets in his own name, and a second where he would have then transferred those assets to YJ. Pl.'s Objections 10. He indicates that when he presented the contract to YJ, "[YJ] declined to go forward with the transaction because it felt like the price was too high." *Id.* at 11. The court determines that YJ's reservation of the final decision to go forward with or decline the March 2005 deal establishes the requisite level of control by YJ to draw an agency relationship with Nichols. *See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 896 (Tex. App.—Dallas 2003, no pet.) (finding an agency relationship between employer and agent when employer requested agent to act on its behalf in contacting a personnel placement firm to help hire a manager; agent was to conduct initial interviews with any candidates the firm referred, and employer retained control by reserving for itself the final hiring decision.).

In light of the above legal standard for determining an agency relationship in a transaction similar to the one at issue here, the court determines that the magistrate judge's finding that Nichols was YJ's agent in March 2005 was not clearly erroneous or contrary to law. The court therefore agrees with the magistrate judge's determination that Nichols, as YJ's agent, had no personal

---

*With respect to the March 2005 negotiations, the evidence reflects that YJ was not present at Nichols's meetings with JumpKing and that Nichols was attempting to structure an asset purchase deal for YJ. Nichols had agreed to represent YJ's interests.

attorney-client privilege barring YJ from discovering documents and communications between Nichols and Winstead pertaining to the March 2005 negotiations.

### C. Attorney-Client Privilege Existing During the May 2005 Transaction

Concerning the May 2005 transaction, the magistrate judge found no basis to conclude that YJ was represented by Winstead. Despite this, the magistrate judge determined that YJ was entitled to discover confidential communications between Nichols and Winstead relating to the May 2005 transaction because YJ had established the crime-fraud exception to Nichols's attorney-client privilege. Nichols contends that the magistrate judge clearly erred by misapplying Texas law to reach this result.

This circuit recognizes the crime-fraud exception to the attorney-client privilege under Texas law. *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994). "[T]he crime/fraud exception permits disclosure of any communications between the attorney and client if the client seeks advice from the attorney in carrying out a crime or fraud." *Id.* To satisfy the crime-fraud exception, "there must be at least a *prima facie* showing that a misrepresentation or concealment was ongoing or about to be committed when the document in question was prepared." *In re Gen. Agents Ins. Co. of Am., Inc.*, 224 S.W.3d 806, 820 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding).

The magistrate judge found that YJ established a *prima facie* case of fraud based on the existing facts and circumstances on the May 31, 2005 closing date. Specifically, he determined that Nichols, prior to the closing and pursuant to his previous consulting agreements, had agreed to represent YJ's interests at meetings and events, and that the late timing of the disclosure to YJ about the two percent royalty was "fraught with the possibility of unfair treatment and deviousness." Nov. 20, 2009 Order at 8. The magistrate judge also drew emphasis to the dilemma of YJ paying for Nichols's attorney's fees despite Winstead's services being provided for Nichols's benefit. From

**Memorandum Opinion and Order – Page 7**

this, he concluded that Nichols engaged in conduct designed to take advantage of or cheat YJ by representing that the Winstead legal services were retained on YJ's behalf.

With respect to the magistrate judge's finding that prior to signing the May 2005 consulting agreement Nichols had agreed to represent YJ's interests, the court agrees that such an arrangement existed. With respect to his finding that Nichols's late disclosure of the two percent royalty was "fraught with the possibility of unfair treatment and deviousness," the court agrees only in part. As discussed, reading the November 2004 and March 2005 consulting agreements together establishes that Nichols was to represent YJ's interests at meetings only in YJ's absence. Here, the record is clear that YJ was in attendance at the May 2005 meeting with its own lawyers from Schwabe. Because Nichols was also an important part of the transaction, serving as a lender to YJ, the court finds that it would have been impossible for Nichols to act as both a lender, representing his own interests, while simultaneously adhering to YJ's best interests. The governing agreement prior to the closing did not require Nichols to represent YJ's interests at all times and under all circumstances, and Nichols was not so bound at this meeting.

The court has reservations, however, with Nichols's conduct following the APA transaction when he sought reimbursement from YJ for Winstead's legal services. Nichols sought such reimbursement under the ambit of his prior consulting agreements, and the evidence is clear that YJ was under the impression that Winstead's legal services were incurred for YJ's benefit. Nichols apparently took no steps to correct YJ's misunderstanding. Indeed, the deposition testimony from YJ's president, Craig Adams, establishes that YJ would not have reimbursed Nichols's legal fees if he had any doubt that the services were solely for YJ's benefit.

That Nichols kept the two percent royalty provision apart from the new May 2005 consulting agreement in an ancillary document on the date of closing, when numerous other agreements were

**Memorandum Opinion and Order – Page 8**

being signed and shuffled between the parties to the transaction, indicates to the court a furtive motive. While Nichols may not have been legally bound to act in YJ's best interests at this meeting pursuant to the prior consulting agreements, his search for reimbursement from YJ while essentially concealing the two percent royalty provision (which Nichols admits was contrary to YJ's interests) constitutes the requisite *prima facie* concealment needed to invoke the crime-fraud exception to the attorney-client privilege. The court cannot comprehend any reason, other than concealment or deviousness, why Nichols would not have included this provision in the main body of the May 2005 consulting agreement. By itself, this may not have been enough to prove the crime-fraud exception; but Nichols's subsequent moves to obtain reimbursement from YJ for such legal work was contemptible and indicative of an intent to deceive.

With respect to the declarations from two practicing lawyers stating that it is not uncommon for a borrower to pay the lender's legal fees, the magistrate judge did not commit clear error when he determined that those declarations were unpersuasive. He came to this conclusion because he believed that the declarations did not appreciate the special circumstances surrounding Nichols's and YJ's relationship, which are distinguishable from a routine, arms-length transaction. The court likewise agrees that on the May 2005 closing date, Nichols's relationship with YJ was not an ordinary one between a borrower and lender. There was a preexisting relationship of trust, trust that was betrayed with Nichols's surreptitious inclusion of a two percent royalty provision and his subsequent efforts to have YJ reimburse all of his legal fees, pursuant to that preexisting relationship.

Nichols's attempt to thwart YJ from discovering his communications with Winstead while simultaneously having billed YJ for Winstead's services under the ambit of a consultancy relationship where he purportedly acted in YJ's interests are inherently inconsistent positions. This

**Memorandum Opinion and Order – Page 9**

inconsistency is as nonsensical as one attempting to ride two horses going in opposite directions at the same time. The court determines that the magistrate judge did not commit clear error when he determined that YJ had proved the crime-fraud exception to Nichols's attorney-client privilege with Winstead, nor was this finding contrary to existing law.

### D. Other Procedural Considerations

YJ and Nichols each assert procedural contentions that certain arguments made by the opposing party were improperly considered by the magistrate judge because they were not raised in connection with YJ's original motion to compel and exceeded the scope of the court's recommitment, or that certain arguments should be disregarded by the court as untimely and waived because of failure to address the implications of the court's prior vacated order. The court rejects all of these contentions and determines that no argument was waived, untimely, or improperly considered by the magistrate judge.

The magistrate judge's analysis did not exceed the scope of the court's recommitment. Due to the encumbered and lengthy history concerning YJ's original motion to compel—including a prior referral to the magistrate judge, a motion to reconsider, a vacated order, and an order of recommitment to the magistrate judge—the court determines that to procedurally bar certain arguments now as untimely or waived simply because they were not filed directly in response to the original motion would fail to serve the interests of justice. The dispute at issue in YJ's original motion to compel is long and tortured; the court therefore has considered all of the arguments from both parties in reaching its conclusion today.

## IV. Conclusion

For the reasons stated herein, the court **overrules** Plaintiff's Objections to Portions of Magistrate Judge Sanderson's November 20, 2009 Order. The magistrate judge's November 20,

**Memorandum Opinion and Order – Page 10**

2009 order is **accepted** to the extent that its analysis is consistent with the court's memorandum opinion and order and **rejects** the magistrate judge's findings in the respects herein indicated. Further, the court **accepts** the magistrate judge's November 20, 2009 order in result and **orders** Nichols to comply with the magistrate judge's November 20, 2009 order as therein set forth on pages 8-9 (which are incorporated herein as repeated verbatim).

The deadline for producing the documents shall be the same as that ordered by the magistrate judge, with the computation of time beginning as of August 26, 2010. With respect to the continuation of or reappearance for any depositions, such depositions shall take place by **October 1, 2010**.

**It is so ordered** this 26th day of August, 2010.

Sam A. Lindsay
United States District Judge